Kevin J. DOBBS, Joel L. Kerns, Plaintiffs–Appellants,

v.

CHEVRON U.S.A., INC., Dennis Bones, James Stephen Carpenter, Defendants–Appellees.

No. 93–8023.

United States Court of Appeals, Tenth Circuit.

Oct. 27, 1994.

---

John W. McKendree, Denver, CO (Richard Rideout, Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, WY, with him on the brief), for plaintiffs-appellants.

Brandin Hay, Dray, Madison & Thomson, Cheyenne, WY (Douglas G. Madison, Dray, Madison & Thomson, with him on the brief), for defendants-appellees.

Before KELLY, SETH, Circuit Judges and OWEN *, District Judge.

OWEN, Senior District Judge:

Two employees of Chevron U.S.A., Inc. separately sued Chevron and their two supervisors in the District Court of Wyoming, alleging various contract and tort claims. The District Court of Wyoming consolidated their actions and thereafter dismissed their claims against their supervisors for lack of personal jurisdiction and awarded Chevron summary judgment. We affirm.

Plaintiff-appellants Joel L. Kerns and Kevin J. Dobbs worked for defendant-appellee Chevron U.S.A. as members of a seismic exploration team, Party Five. Party Five worked in various locations in Texas, California, Wyoming, Colorado, Nevada and North Dakota. Individual defendant-appellees Dennis Bones and James Stephen Carpenter, Chevron employees, were supervisors for Party Five.

Dobbs, a resident of Wyoming, began working for Chevron in February 1987, recording seismic data and overseeing field operations. Two months later he was injured in an on-the-job vehicle accident in California. He was hospitalized and released the following day. Although he returned to work the following week, he later underwent two spinal operations, and after the second operation he did not return to work. According to Dobbs, subsequent to the accident his immediate supervisors on Party Five, Bones and Carpenter, harassed and humiliated him. Dobbs alleges that Carpenter repeatedly refused to let Dobbs miss work to see a doctor, and that Bones similarly disallowed a short

---

* The Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

medical leave during June or July 1989. Dobbs claims that he was demoted to second observer from his previous position as first observer because he was on light duty and could not lift heavy objects. Dobbs alleges that Carpenter ridiculed his ailments, displayed open belligerence toward him, and disparaged his abilities. Dobbs also contends that Carpenter, who was later dismissed for alcohol abuse, while drunk hit him in the back with his fist. He also contends that a certain report on his 1989 California accident was withheld from him until 1990. Dobbs filed a workers' compensation claim in California, which has provided benefits covering medical care, prescription drugs, and a biweekly compensation check. Dobbs remains employed by Chevron, though on long-term medical disability leave without pay.

Kerns, an Oklahoma resident, was hired by Chevron in 1989. He was a field clerk for Party Five, responsible for compiling daily time records of hourly employees and inventory, billing and expense reports. He was also responsible for moving the field office whenever Party Five began a new assignment at a different location. About a year after being hired, Kerns sustained a hernia while setting up a Party Five field office in Laredo, Texas. He maintains that notwithstanding his injury, he was required to work twelve hours every day for several weeks before being permitted to seek medical treatment, and that Bones and Carpenter, his supervisors, harassed and mistreated him, threatening him with the loss of his job and making derogatory comments. He asserts that they said his injuries would not be covered because he did not report the injury immediately. However, Kerns did file a workers' compensation claim, and very shortly thereafter Chevron agreed to provide disability benefits. Kerns underwent a hernia operation in Oklahoma in May 1990. He returned to work on June 23, but his hernia continued to plague him, and he obtained a medical release from a Wyoming physician. He thereafter settled his compensation claim against Chevron, left its employ, and now works elsewhere.

Dobbs asserts claims against Chevron for negligence concerning the vehicle accident, breach of contract, negligent supervision of employees, and negligent representation. Against Bones and Carpenter, he asserts claims of tortious interference with contract, and civil conspiracy to interfere with his contract of employment and prospective economic advantage; and against all defendants for tortious interference with prospective economic advantage, intentional infliction of emotional distress, and punitive damages. Kerns' claims include the foregoing plus a claim of retaliatory discharge for filing a workers' compensation claim.

The district court, in a lengthy opinion, dismissed the claims as against Bones and Carpenter for lack of personal jurisdiction, and in a separate opinion and order granted summary judgment to Chevron.

We review both the dismissal for lack of personal jurisdiction and the grant of summary judgment *de novo*. *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987); *Goichman v. Aspen*, 859 F.2d 1466, 1467 (10th Cir.1988). Summary judgment is appropriate only if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Missouri Pacific R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 798 (10th Cir.1988). We must view the evidence in the light most favorable to the party opposing the motion. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir.1988). However, the "mere existence of *some* factual dispute will not frustrate an otherwise proper summary judgment." *Missouri Pacific*, 862 F.2d at 798, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

 Turning first to *in personam* jurisdiction, in this, a diversity action, a federal court has *in personam* jurisdiction as permitted by state law, consistent with "not offend[ing] the due process clause of the Fourteenth Amendment." *Shanks v. Westland Equipment and Parts Co.*, 668 F.2d 1165, 1167 (10th Cir.1982). Wyoming's long-arm statute explicitly states that "[a] Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution." Wyo.Stat. § 5–1–

107(a). Thus, a defendant must have "certain minimum contacts" with the forum state to satisfy due process. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Such contacts, if "continuous and systematic," confer general jurisdiction and allow the plaintiff to litigate matters occurring outside the forum state. *Helicopteros v. Hall*, 466 U.S. 408, 415 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984). On the other hand, if a claim arises from a matter occurring within the forum state, less is required and specific jurisdiction exists if the defendant has "purposefully avail[ed himself] of the privilege of conducting activities within the forum State ..." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This requirement serves several functions. It identifies the acts that a defendant would reasonably expect to subject him to jurisdiction in the particular forum, and it ensures that only the defendant's acts involving the forum establish jurisdiction. *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir.1990). It also requires that the effects of the defendant's actions have a significant impact in the forum state. *Anderson v. Perry*, 667 P.2d 1155, 1157 (Wyo.1983).

We conclude that the District Court properly determined that Wyoming could not exercise personal jurisdiction over individual defendants Bones and Carpenter since neither maintained continuous and systematic contacts with Wyoming or purposefully availed himself of the privilege of acting there. Both were present in Wyoming only at the direction of Chevron. In this connection, we note that Dobbs was on medical leave at the time Party Five was in Wyoming. There could, therefore, be no general personal jurisdiction. Specific jurisdiction was similarly lacking because Carpenter's only alleged actions in Wyoming relevant to the action were his minor derogatory comments about Dobbs. Bones's only assertion of relevant action in Wyoming was the alleged unscheduled performance evaluation of Kerns, in which Bones is said to have made certain unspecified derogatory comments. These can hardly be regarded as having significant impact in Wyoming.

Accordingly, the claims against Bones and Carpenter were properly dismissed.

Plaintiff-appellants also asserted a number of claims against Chevron, all of which were dismissed by way of summary judgment. Those claims consisted of breach of employment contract; negligence as to Dobbs' vehicle accident; tortious interference with a contract and with prospective economic advantage; intentional infliction of emotional distress; negligent representation and supervision of employees; civil conspiracy to effect the above harms, and retaliatory discharge. We need deal with no more than the first claim: breach of employment contract.

At the outset, we observe that the district court properly applied Wyoming's choice of law rules, that being the forum state. *Mitchell v. State Farm Fire and Casualty Co.*, 902 F.2d 790, 792–93 (10th Cir. 1990). Wyoming applies "the law of the state where the cause of action arose." *Dworkin v. Hustler Magazine, Inc.*, 647 F.Supp. 1278, 1281 (D.Wyo.1986). Accordingly, in a contract action, the applicable law is that of the forum in which performance was to occur or where the contract was made. *Wyoming Construction Co. v. Western Casualty and Surety Co.*, 275 F.2d 97, 105 (10th Cir.1960).

Both Dobbs and Kerns assert that they were parties to "implied contracts for careers." While neither has a written employment contract with Chevron, they contend that a contractual relationship arose from verbal assurances allegedly given by their supervisors.

But Wyoming, California and Texas law all have the presumption that absent an express contract specifying terms, the employer-employee relationship is at-will— either party may terminate the employment at any time. *See Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1259 (Wyo.1993); *Lincoln v. Wackenhut Corporation*, 867 P.2d 701, 703 (Wyo.1994); *Goodyear Tire and Rubber Co. v. Portilla*, 836 S.W.2d 664, 667 (Tex.App.1992); *Haycock v. Hughes Aircraft Company*, 22 Cal.App.4th 1473, 28 Cal.Rptr.2d 248, 256–57 (1994); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654,

254 Cal.Rptr. 211, 214, 765 P.2d 373, 376 (1988) (en banc). Verbal assurances of a term of employment cannot defeat this presumption unless accompanied by some form of written documentation.

To this end, Dobbs points to his letter of employment from Chevron's California office to his Wyoming address. Consequently, his claim could be decided under either California or Wyoming law. In Wyoming, documents attendant to hiring, such as a letter or employee handbook, may create a contract between . Chevron and Dobbs to overcome Wyoming's presumption of at-will employment. *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702–3 (Wyo.1985). The Supreme Court of Wyoming has stated: "If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and the interpretation becomes a mixed question of law and fact." *Sanchez,* 855 P.2d at 1259 (citations omitted).

Here, however, we conclude as a matter of law that there is no ambiguity. The letter of employment specifies a salary, extra pay for field work away from headquarters, the terms of moving expenses, and the requirement of a drug policy. It does not limit the causes for termination. It does not specify a minimum term of employment. The other documents Dobbs refers us to are various Chevron employee handbooks such as the Benefits Almanac, the Substance Abuse Plan, Compliance Procedures, and/or a Supervisors' Guide for Evaluating Performance. These could modify an at-will employment relation into one terminable only for cause if they contained language evidencing an intent to create specific discharge procedures and justifications. *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo. 1985); *Allen v. Safeway Stores, Inc.,* 699 P.2d 277, 281–82 (Wyo.1985). To do so, however, they must contain an objective manifestation of assent to contract creating reasonable reliance by the employee. *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 990 (Wyo.1991).

None of the handbooks here, however, do this. Indeed, the Benefits Almanac contains a specific disclaimer under the bold-printed heading "No Right to Employment:"

> Nothing in your benefit plans gives you a right to remain in employment or affects Chevron's right to terminate your employment at any time, with or without cause, which right is hereby reserved.

The same conclusion is reached under California law, which also presumes an at-will relationship between employer and employee. *Foley v. Interactive Data Corp.,* 254 Cal.Rptr. at 214, 765 P.2d at 376. Section 2922 of the California Labor Code provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal.Lab.Code § 2922 (1992). The California Supreme Court has identified factors that may overcome this presumption, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 327, 171 Cal. Rptr. 917 (1981). Dobbs contends that it was his anticipation that he would work the rest of his life with Chevron. According to Dobbs, he based this impression on conversations with Tim McMahen and Don B. Stockard, other Chevron employees. McMahen said that "the benefits were good, the pay was good, and that it was a steady job and that ... there was no plans to shut down, it was a company crew, the jobs were there, the contract would be there." Stockard, Dobbs said, had "really built the crew up and gave me the impression that it was going to be there for a long time ... that there was good job security there." These statements, however, do not manifest an intent to contract, and any reliance upon them as creating a contract for life-long employment was unwarranted. Whether such statements were indeed made is here a question of fact, but even if made, without more they do not defeat summary judgment.

Kerns' claim is similar. He was hired in Texas as an hourly field clerk for Party Five. Consequently, his claim is gov-

erned by either Texas or Wyoming law. Kerns states that he "had a verbal agreement from my immediate supervisors, Steve Carpenter and Dennis Bones, as to them asking me to be an employee asking me to take the pre-employment drug screen and physical and by me being allowed to participate in Chevron's insurance and benefits packages and profit sharing." He also received the Benefits Almanac and other employee hand-outs.

Under Wyoming law, set forth *supra* in the discussion as to Dobbs' claim, the Chevron publications do not manifest an intent to so contract; rather, the Benefits Almanac, as observed, specifically negates it. The statements made by Bones and Carpenter concerning the drug test, benefits package and profit sharing are insufficient to create a material factual issue as to the existence of an implied contract. Accordingly, under Wyoming law, Kerns' claim fails.

■■■■■ Kerns' claim similarly fails under Texas law. *Almazan v. United Services Automobile Assoc., Inc.,* 840 S.W.2d 776, 780–81 (Tex.App.1992). Texas law imposes on an employee the burden of proving that a written contract overcomes the presumption of at-will employment. *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App. 1987). None of the documents proffered in this action indicate that the employment relationship between Kerns and Chevron was anything other than at-will. Thus, the district court appropriately granted summary judgment in favor of Chevron on the Dobbs and Kerns breach of contract claims.

We have examined the remaining claims raised by Dobbs and Kerns against Chevron. They have been fully and properly disposed of in the lengthy and thorough opinion of the District Court below, and require no discussion by us.

Accordingly, the order of the District Court of March 5, 1993 dismissing the actions against Carpenter and Bones for lack of *in personam* jurisdiction, and the order of March 16, 1993 granting summary judgment

in favor of Chevron on all counts in the Dobbs and Kerns complaints, are affirmed.