# PUBLISH

# UNITED STATES COURT OF APPEALS
# Filed 12/11/96TENTH CIRCUIT

BEVERLY KUENZLE and WAYNE
KUENZLE,

     Plaintiffs-Appellees,

v.

No. 95-8031

HTM SPORT-UND
FREIZEITGERÄTE AG,

     Defendant-Appellant,

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 92-CV-299-B)

Hampton K. O'Neill (W. Henry Combs, III, with him on the briefs), of Murane &
Bostwick, Casper, Wyoming, for Defendant-Appellant.

William R. Fix, Jackson, Wyoming, for Plaintiffs-Appellees.

Before **SEYMOUR**, Chief Judge, **HOLLOWAY** and **BRISCOE**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Defendant HTM Sport-Und Freizeitgeräte AG (Tyrolia) sought leave to appeal the district court's denial of its motion to dismiss for lack of personal jurisdiction. The district court granted leave for a permissive appeal pursuant to 28 U.S.C. § 1292(b). We accepted the appeal and we now reverse the decision of the district court.

I.

Plaintiff Beverly Kuenzle, a tourist from Missouri, was seriously injured in a skiing accident near Jackson, Wyoming, in 1990. At the time of the accident, Ms. Kuenzle was using Model 285-S ski bindings that were manufactured in Austria by defendant Tyrolia and purchased by her in Switzerland in 1986. Ms. Kuenzle asserts that the bindings were defectively designed, manufactured and/or assembled, and that they had been recalled prior to her accident. She brought this diversity action against Tyrolia in Wyoming, alleging breach of warranty, strict product liability, and negligence. Ms. Kuenzle's husband, Wayne, sued Tyrolia for loss of services, consortium, and companionship, society and support.[1]

---

[1] The Kuenzles also sued Hoback Sports, Inc. (Hoback), a Jackson, Wyoming, business. Ms. Kuenzle had brought her skis to Hoback to be serviced shortly before the accident. The Kuenzles alleged that Hoback had a duty to inform Ms. Kuenzle that her bindings had been recalled because Hoback knew about the recall at the time it serviced Ms. Kuenzle's skis. Prior to the district court's consideration of Tyrolia's motion to dismiss, the Kuenzles reached a

(continued...)

Tyrolia has not addressed the merits of the Kuenzle's claims, arguing instead that it had insufficient contacts with Wyoming to support assertion of the court's jurisdiction. Specifically, Tyrolia points out that it is an Austrian company which sells its products in the United States only through an independent distributor and that it conducts no business in Wyoming. The Kuenzles argue that Tyrolia had sufficient contacts with Wyoming, through the actions of its employees and independent distributor, to establish personal jurisdiction.

To determine whether jurisdiction is present, we first review the criteria for establishing personal jurisdiction and then evaluate whether any of the contacts on which the Kuenzles rely satisfy those criteria.

II.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis omitted). Wyoming courts "may exercise

_____

(...continued)
settlement with Hoback, leaving Tyrolia as sole defendant.

-3-

jurisdiction on any basis not inconsistent with [either] the Wyoming or [the] United States constitution." WYO. STAT. § 5-1-107(a) (1992). Because this statute extends Wyoming jurisdiction to the limit of the federal constitution, "our only concern is whether . . . maintenance of the suit . . . would . . . offend the due process clause of the Fourteenth Amendment." *Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982).

Historically, due process was considered to be satisfied only when a defendant's person or property was present in the forum state. *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). The personal presence requirement generally prevented assertion of jurisdiction over a nonresident defendant, *id.*, especially when the defendant was a corporation which was considered "present" only in its state of incorporation. *See* 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1066 (2d ed. 1987) (discussing traditional notions of jurisdiction as applied to corporate defendants). In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Court relaxed *Pennoyer's* rigid presence requirement when it held that, in addition to presence of person or property in the forum, due process would not be offended by the exercise of jurisdiction over a nonresident defendant if that defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The "'minimum contacts' standard may be met in either of two ways." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). First, a court may exercise *specific* jurisdiction if a "defendant has 'purposefully directed' his activities at residents of the forum . . . *and* the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted) (emphasis added). Second, a court may exercise *general* jurisdiction where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless "continuous and systematic." *Trierweiler*, 90 F.3d at 1533 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *Burger King,* 471 U.S. at 473 n.15; *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994); *Kennedy v. Freeman*, 919 F.2d 126, 128 n.2 (10th Cir. 1990).[2] Where "[g]eneral

---

[2]The "minimum contacts" principle was first articulated in *International Shoe v. Washington*, 326 U.S. 310, 311-12 (1945), in the context of specific jurisdiction. The cause of action there arose out of forum-related contacts. Since that time, some courts have applied "minimum contacts" analysis exclusively to specific jurisdiction cases. *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984). That restrictive characterization of minimum contacts is understandable given the Supreme Court's statement in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984), that minimum contacts are not required for an assertion of

(continued...)

jurisdiction lies . . . the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler*, 90 F.3d at 1533.

"Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case." *Shanks*, 668 F.2d at 1166. "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985). As is the case here, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* "We

---

[2](...continued) general jurisdiction; rather, the proper general jurisdiction inquiry is whether the defendant's contacts are sufficiently "'continuous and systematic.'" *Id.* (quoting *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 438 (1952)). The strong implication from *Keeton* was that "minimum contacts" was a tool only of specific jurisdiction analysis. But since the issuance of *Keeton*, the Court has prefaced its discussion of both specific and general jurisdiction over nonresident defendants with the phrases "minimum contacts" and "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *International Shoe*, 326 U.S. at 316). Since *Helicopteros*, the practice of using the phrase "minimum contacts" to signify the broader due process inquiry into the sufficiency of any nonresident defendant's contacts with a forum state, rather than just an analysis of the sufficiency of specific jurisdiction contacts, has been adopted by many courts, and is followed by our circuit. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996); *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994).

resolve all factual disputes in favor of the plaintiff," and "review[] the district court's ruling . . . de novo." *Far West Capital*, 46 F.3d at 1075.


III.

Although the district court held it had *in personam* jurisdiction over Tyrolia without specifying whether that jurisdiction was specific or general, it applied a specific jurisdiction analysis, as do both parties in their appellate briefs.[3] We will therefore first consider whether Tyrolia is properly subject to specific jurisdiction in Wyoming.

A. Specific Jurisdiction

"Specific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In re Application to Enforce Administrative Subpoenas Duces Tecum*, 87 F.3d 413, 418 (10th Cir. 1996) (quoting *Burger King,* 471 U.S. at 472). In finding that Tyrolia had sufficient contacts with Wyoming to justify the assertion of personal jurisdiction, the

---

[3]The district court and the parties applied the law of two specific jurisdiction cases to the facts of this case, *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

district court considered only one branch of the specific jurisdiction test: the degree of purposeful availment reflected in the contacts of the defendant with the forum state. Although the district court gave extensive review to that issue, it did not address the second prong, which must be met before a court can properly exercise specific jurisdiction. The contacts must reflect purposeful availment *and* the cause of action must arise out of those contacts.

In this case, Tyrolia manufactured the bindings in Austria and Ms. Kuenzle bought them in Switzerland and brought them to Wyoming herself. Regardless of any contacts that exist between Tyrolia or its independent distributor and the forum, this cause of action for defective bindings and breach of warranty did not arise out of those contacts. As the court noted in *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995), the requirement "that the claim arises out of or results from the forum-related activities, is . . . not satisfied" when the plaintiff "would have suffered the same injury even if none of the [defendant's forum] contacts had taken place." *Id*. at 271-72. Ms. Kuenzle's accident would have occurred in Wyoming even if Tyrolia had made none of the contacts on which the Kuenzles rely to create jurisdiction. We therefore conclude

that the cause of action did not arise out of forum related activities and that the district court does not have specific jurisdiction over Tyrolia.[4]

B. General Jurisdiction

Although specific jurisdiction fails in this case, due process would not be offended by the district court's assertion of jurisdiction if Tyrolia had contacts with Wyoming sufficient to "constitute the kind of continuous and systematic general business contacts" required for general jurisdiction. *Helicopteros*, 466 U.S. at 416.

> In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in

---

[4]Because the parties have not briefed or argued the issue, "we decline to reach the question[] [of] whether the terms 'arising out of' and 'related to' describe different connections between a cause of action and a defendant's contacts with a forum." *Helicopteros*, 466 U.S. at 415 n.10. *See also Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206-07 (1st Cir. 1994) (discussing how courts since *Helicopteros* have interpreted the relatedness requirement).

For a discussion of the "arises out of" component of specific jurisdiction in a hypothetical case similar to the case at bar, *compare* Mary Twitchell, *The Myth of General Jurisdiction*, 101 Harv. L. Rev. 610, 660-65 (1988) (discussing a case where defendant corporation markets a product and plaintiff is injured in the forum state, but the cause of action does not "arise out of" the forum state because plaintiff did not buy the product in the forum), *and* Mary Twitchell, *A Rejoinder to Professor Brilmayer*, 101 Harv. L. Rev. 1465, 1469-70 (1988) *with* Lea Brilmayer, *Related Contacts and Personal Jurisdiction*, 101 Harv. L. Rev. 1444, 1459-62 (1988).

the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Trierweiler*, 90 F.3d at 1533 (citing 4 WRIGHT & MILLER § 1069 at 348-55 (collecting cases)).

The Kuenzles argue (albeit in the specific jurisdiction context) that Tyrolia has established sufficient contacts with Wyoming in two ways, directly through its acts in the forum, and indirectly through the acts of its independent distributor. We will consider the sufficiency of those contacts in light of the factors set out above.

### 1. Tyrolia Contacts with Wyoming

Tyrolia is not authorized to conduct business in Wyoming. It maintains no offices or employees in Wyoming, it owns no property in Wyoming, it maintains no telephone listing in Wyoming, and it does no advertising for the Model 285-S bindings in Wyoming. Although Tyrolia products apparently commanded a substantial share of the regional and national markets, there is no such evidence specific to Wyoming. The record contains no indication that any employee or officer of Tyrolia has ever been in Wyoming, or even, with one exception,[5] that

---

[5]Hoback's general manager, Vincent Principe, attended a Tyrolia seminar in Kitzbuhel, Austria, in early January 1995. The Austrian government and Atomic, another Austrian ski products manufacturer, paid Mr. Principe's travel expenses to Kitzbuhel as part of a promotion for Austrian products. While he was there,
(continued...)

-10-

Tyrolia has ever had direct dealings with any person or business in Wyoming.

Although Tyrolia has some contacts with the United States,[6] it has no direct contacts with the state of Wyoming. In the absence of continuous and systematic activity in the forum, we cannot justify a finding of general jurisdiction based on Tyrolia's contacts alone. We must therefore analyze Tyrolia's indirect contacts with Wyoming, created through its independent distributor, to determine whether they are sufficient to justify the assertion of general jurisdiction over Tyrolia.

### 2. Independent Distributor Contacts with Wyoming

At the time of Ms. Kuenzle's accident, Tyrolia's independent United States distributor was Raichle Molitor USA, Inc. (Raichle), which is based in Brewster,

---

(...continued)
Mr. Principe discussed Tyrolia's wares with a Tyrolia staff employee.

[6]Franz Deutsch, Tyrolia's general manager, stated in his 1995 deposition that he had visited the United States twice in 1994 to attend a trade show in Las Vegas as a representative of Tyrolia. He generally goes to this trade show every two or three years. At the show, he is usually accompanied by three to five employees of Tyrolia's United States distributor. Mr. Deutsch has also been to Vail and Aspen in Colorado on business, but has never visited Wyoming.
Tyrolia's other direct contact with the United States is provided through its insurance carrier. Tyrolia carried liability insurance provided by a New York insurance carrier at the time Ms. Kuenzle's accident occurred.
For a discussion of personal jurisdiction over international defendants, see Gary B. Born, *Reflections on Judicial Jurisdiction in International Cases*, 17 Ga. J. Int'l & Comp. L. 1, 37-42 (1987) (arguing theory of aggregate national contacts when international defendants are involved in state law cases), and Graham C. Lilly, *Jurisdiction over Domestic and Alien Defendants*, 69 Va. L. Rev. 85, 116-17 (1983).

New York.  Raichle bought Tyrolia bindings F.O.B. Schwechat, Austria[7] and shipped them to the United States.  Sometime after Ms. Kuenzle's accident, Tyrolia changed to a new distributor, the firm of Head Sports (Head) in Boulder, Colorado.  Tyrolia now ships its products directly to Head in Colorado.  As independent distributors, Raichle and Head promoted Tyrolia's products.  Through these efforts, Tyrolia products apparently command a one-sixth share of the bindings market, although the record does not specify whether this figure refers to sales within the United States as a whole or just the Rocky Mountain area.  One-fifth of Tyrolia's entire sales of bindings are to the United States and Canada.  In the past, promotional activities by the distributors have included: training technicians to service Tyrolia equipment; staffing product booths at trade shows; assigning sales representatives to territories which include Wyoming; authorizing retail outlets to act as "dealers" of Tyrolia products, some of which apparently sell Tyrolia products in Wyoming; and authorizing retail stores to serve as recall dealers in Wyoming.[8]

---

[7]This "means that the seller was contractually required to make delivery in [Schwechat], not elsewhere."  *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1365 (7th Cir. 1985) (citing JAMES J. WHITE & ROBERT S. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE 107 (2d ed. 1980)).

[8]Hoback Sports in Jackson, Wyoming, was a Tyrolia recall distributor for one year in 1991.  As a recall distributor, Hoback sold no new Tyrolia equipment, but did replace bindings and other recalled equipment for Tyrolia.  In his

(continued...)

From these facts it is clear that Tyrolia products are distributed in the United States and in Wyoming through an independent distributor. It is not equally clear, however, that the acts of the independent distributor can be attributed to Tyrolia for the purpose of establishing general jurisdiction. As the Court in *International Shoe* explained, a nonresident corporate entity creates contacts for personal jurisdiction purposes through its authorized representatives: its employees, directors, officers and agents. *International Shoe*, 326 U.S. at 316 (a corporation's presence, for personal jurisdiction purposes, is "manifested only by activities carried on in its behalf by those who are authorized to act for it"). The actions of an independent distributor may not insulate a foreign company from *specific* jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality opinion of Justice O'Connor) ("marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may constitute the "[a]dditional conduct" needed to establish minimum contacts); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994) ("a foreign manufacturer or seller [which] rids itself of title by a sale F.O.B. a foreign port [does not] insulate [itself] from jurisdiction if there is the other type of activity" indicating purposeful availment). However, a different analysis

[8](...continued) deposition, Hoback's manager stated that two other stores in the Jackson area sold Tyrolia equipment between 1976 and 1991.

applies in the *general* jurisdiction context because, "[f]or general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction." *Doe v. National Medical Servs.*, 974 F.2d 143, 146 (10th Cir. 1992).

In *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422 (9th Cir. 1977), the court stated that, to achieve general jurisdiction over a corporation through a subsidiary, the existence of a "general" agency relationship must be demonstrated "so that it is not unfair or unreasonable to have [the foreign corporation] answer to the general jurisdiction of the . . . district court." *Id.* Other courts have concluded in the general jurisdiction context that an independent distributor's actions in a forum state will not be attributable to a foreign corporation in the absence of an agency relationship. *See Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (holding that actions of distributors in forum state to sell and service products will not constitute continuous and systematic contact by manufacturer with forum required for general jurisdiction); *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 970 (6th Cir. 1987) (concluding that, since the "[distributor's] status was that of an independent contractor [rather than an agent,] . . . we cannot attribute its conduct and contacts to [the importer]"); *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 37 (9th Cir. 1980) (finding no general jurisdiction in Oregon over

Swedish corporation that sells its products F.O.B. in Sweden to a United States subsidiary which markets through an Oregon independent distributor, when only additional contact between defendant and forum were letters and occasional visits). *But cf. Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 465 (6th Cir. 1989) (reversing dismissal for lack of general personal jurisdiction where corporation had in-state contacts established by an independent sales representative, by solicitation of sales, and by making sales accounting for three percent of gross).

We are persuaded that in the absence of an agency relationship, the acts of a distributor are not ordinarily attributable to a foreign manufacturer for purposes of establishing general jurisdiction. In the circumstances of this case, where there are no direct contacts between Tyrolia and Wyoming, we hold that the Kuenzles must show the existence of an agency relationship between Tyrolia and its distributor in order for the distributor's contacts with Wyoming to support general jurisdiction over Tyrolia.

An agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *True v. Hi-Plains Elevator Mach., Inc.*, 577 P.2d 991, 999 (Wyo. 1978) (quoting RESTATEMENT (SECOND) OF AGENCY § 1 (1957)). "There can be no agency

relationship unless the factual element of control is present." *Id.* at 999. An agency relationship cannot be presumed, but rather must be clearly demonstrated. *Sarchet v. Roach*, 163 P.2d 185, 188 (Wyo. 1945). Although it is not inconceivable that an agency relationship existed between Tyrolia and Head,[9] the Kuenzles have not introduced evidence sufficient to permit us to draw that conclusion. Consequently, we cannot impute to Tyrolia any contacts Head had with Wyoming in its efforts to market products made by Tyrolia.

Because the record does not establish that Tyrolia had continuous or systematic contacts with Wyoming, either directly or through an agent, we hold that the Kuenzles did not meet their prima facie burden of establishing that the district court could exercise general jurisdiction over Tyrolia.

---

[9]The pertinent agency relationship for general jurisdiction would be between Tyrolia and Head, its independent distributor in 1992 at the time the complaint was filed. *Wells Fargo*, 556 F.2d at 422. The record fails to demonstrate the existence of an agency relationship between Tyrolia and Head. First, the record fails to distinguish between the acts of Raichle and Head. Second, even if all the acts of independent distributors in the record were assumed to be attributable to Head, the record fails to establish the elements of control and consent required of any express or implied agency relationship.

IV.

Because the Kuenzles have failed to establish that the district court could exercise either specific or general jurisdiction over Tyrolia, we REVERSE and remand with directions to dismiss this action for lack of jurisdiction.