Phillip CAMERON and Yurika Cameron, Individually and as Class Representatives on behalf of all others similarly situated, Plaintiffs,

v.

GROUP VOYAGERS, INC.,
d/b/a Cosmos, and Does 1–
50 inclusive, Defendants,

and

Group Voyagers, Inc., d/b/a Cosmos
Third–Party Plaintiffs,

v.

Frota Azul, Liebherr Werk, and
Gerber + Partner Gmbh, Third–
Party Defendants.

HSBC Trust Co. (U.K.) Ltd., on behalf
of the heirs of Rona Herbert,
deceased, Plaintiff,

v.

Group Voyagers, Inc., d/b/a Cosmos,
and Does 1–50 Inclusive,
Defendants.

Nos. CIV.A.02–K–806, CIV.A.03–K–1075.

United States District Court,
D. Colorado.

March 15, 2004.

 

Walter L. Gerash, Gerash Law Firm, PC, Eric R. Toray, Daniel P. Gerash, Jesse Luke Wiens, Gerash, Toray & Gerash, P.C., Denver, CO, Alexander Anolik, Jordan Lavinsky, Alexander Anolik, PLC, San Francisco, CA, for Plaintiff.

Aldo DelPiccolo, Mendenhall, Delpiccolo & Potrykus, Denver, CO, James O. Miller, Maxine J. Lebowitz, Jeffrey S. Behar, Ford, Walker, Haggerty & Behar, LLP, Long Beach, CA, for Defendant.

C. Michael Montgomery, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Christen Arthur Mattison, Hall & Evans, John P. Mitzner, Allman & Mitzner, LLC, Denver, CO, Jeffrey W. Gunn, Morris & Stella, Chicago, IL, for Third–Party Defendant.

## ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

These personal injury actions arise out of a tour bus crash that took place near Venice, Italy on June 12, 2001, injuring some or all of the approximately 30 passengers on board. Most of the passengers were citizens of the United States, Great Britain or Australia, although two were citizens of Malaysia and the tour director was a citizen of Slovenia.

The first action, 02–K–806, was originally filed as a class action by U.S. citizens Phillip and Yurika Cameron individually and as representatives of those similarly situated. Named as Defendant was Group Voyagers, Inc. (GVI), d/b/a Cosmos Travel, the Colorado entity that sold the Camerons and the other U.S. passengers their travel package, and various individual John Doe agents (or "Executives") of GVI. Plaintiffs assert claims for negligence and breach of contract based on allegations that Cosmos, through its various Cosmos entities, hired an incompetent bus driver and then overworked him in violation of its

contractual obligations to them. Plaintiffs contend the bus driver was dangerously sleep-deprived at the time of the crash, when he plowed into the back of a slow-moving truck carrying a giant construction crane. Plaintiffs also assert claims for breach of contract and negligent and intentional infliction of emotional distress based on the actions of various Cosmos's agents who appeared at the hospital immediately after the accident, interfering with passengers' medical treatment in the name of cost saving and "cajoling" passengers into signing release of liability forms from their hospital beds.

In response to Plaintiffs' claims, GVI filed a Third–Party Complaint against the Portugese and German drivers of the tour bus and crane truck that crashed, their employers and the manufacturer of the crane that was being transported, asserting the fault for the accident was theirs and asserting claims for indemnification, contribution and apportionment of fault and for declaratory relief.

The second action, 03–K–1075, was filed by HSBC Trust Co. (U.K.) Ltd. ("HSBC") on British passenger Hebert's behalf. Hebert died shortly after the accident from causes HSBC asserts were the direct result of the crash. GVI, for its part, contends Hebert died of causes unrelated to the crash. The second action is identical to the first, and has been consolidated with 02–K–806 on the parties' stipulation.

Both cases are before me on a series of jurisdiction/venue-based motions, which were argued at a hearing on March 9, 2004. These Motions were not only a continuation of the challenge brought by the Third–Party Defendants in 02–K–806 to this court's jurisdiction over them, but also a challenge in the first instance to the claims of the 18 non-U.S. citizens in 02–K–806 and HSBC in 03–K–1075, on grounds these Plaintiffs contracted primarily with wholly independent Cosmos entities in the United Kingdom and Australia and should, therefore, be required to pursue their claims in those countries against those independent entities. The British passengers, moreover, *must* pursue their claims in Great Britain according to GVI, because their booking contract included a forum selection clause mandating that venue for any claims arising out of the tour.

## I. *PROCEDURAL HISTORY.*

Phillip and Yurika Cameron originally filed Civil Action No. 02–K–806 in the Northern District of California, where they reside. They filed an Amended Complaint in February 2002, which GVI moved to dismiss for *forum non conveniens* or, in the alternative, to transfer the action to Colorado pursuant to a forum selection clause in GVI/Cosmos booking contract and because GVI is headquartered in Colorado. The parties entered into a Stipulation and Request for Order transferring the case to Colorado which the California District Court, in April 2002, granted. In transferring the matter, the California court deemed GVI's Motion to Dismiss and a related Motion to Strike moot.

The parties' Stipulation included an express agreement that the District of Colorado was "the proper venue in which this matter should be adjudicated," and an express waiver by Defendant GVI of "its right to bring another motion to dismiss or transfer this action on the grounds that Colorado is not the proper venue." Stipulation and Request for Order Transferring Action, Order (dated 4/16/2002) at 2. Plaintiffs assert that at the time this Stipulation was agreed, GVI knew the proposed Plaintiff Class included all of the passengers on the bus, including all of the passengers who were foreign citizens.

A review of the parties' joint filings in the immediate wake of the transfer bears Plaintiffs out. In the Joint Case Manage-

ment Statement filed May 17, 2002, for example, Plaintiffs represented that "[a]dditional plaintiffs, most of whom reside in other countries, may be joined as class members," and stated they would "bring a motion for class certification." Joint Statement, ¶¶ (f) & (g). GVI's said nothing about challenging the proposed inclusion of foreign passengers in the class, and stating its position regarding Plaintiffs' claims only in terms of an intent to seek the dismissal of Plaintiffs' claims "for intentional infliction of emotional distress and for violation of the California Business & Professions Code ..." and moving to "[s]trike the prayers for punitive damages and injunctive relief." *Id.*[1]

In the parties' July 2002 joint proposed Scheduling Order, it is apparent GVI affirmatively understood the proposed plaintiff class was comprised of *all* passengers on the bus at the time of the crash, including the foreign citizens presently parties to these actions. In the section of the proposed Order detailing the discovery plan, for example, the parties represent that in light of the "class status of this action, which includes class members residing around the world and throughout the United States, the parties believe the Court should provide substantial time for the completion of discovery." Order, § 7(b). GVI did indicate it might challenge efforts to certify the class, but only on grounds that "numerosity and similarity of any plaintiffs' class are not as yet established." *Id.* § 2B.

In the end, Plaintiffs did not move to certify a class and instead, one day before the date provided in the Scheduling Order for the filing of such a motion, Plaintiffs' sought leave to file a Second Amended Complaint seeking to withdraw the request for class certification and to assert the earlier class claims on behalf of 26 bus passengers individually. I granted leave, and Plaintiffs' Second Amended Complaint was accepted for filing on October 2, 2002.

On April 14, 2003, GVI filed its Motion for Partial Dismissal and/or Stay of Proceedings urging the dismissal of the 18 "foreign" Plaintiffs in 02–K–806 or, in the alternative, for a stay so those non-U.S. citizen Plaintiffs could pursue their claims in the courts of their respective home countries. When Civil Action 03–K–1075 was filed on British citizen Hebert's behalf in June 2003, GVI asserted an identical motion seeking the dismissal of that action in its entirety on the same grounds.

During this same period, April 2003 through September 2003, each of the five Third–Party Defendants in 02–K–806 filed Motions to Dismiss under Fed.R.Civ.P. 12(b)(2), urging a lack of personal jurisdiction. The parties stipulated to conduct limited discovery on the jurisdictional issues raised, and to continue further briefing on the Motions to Dismiss until such discovery was completed.

On December 10, 2003, I issued an Order on the various Motions. Based on the supplemental briefing and the evidence

---

1. In its statement, GVI also indicated it "may cross-[sic] complain against the tour bus owner/operator, Frota Azul, of Portugal and its driver," *id.* at (f), which it did. On July 17, 2002, GVI in fact filed a Third–Party Complaint for indemnity, contribution and apportionment of fault, naming not only Frota Azul and its driver, but also the German driver of the crane truck with which the bus collided, his employer and the German manufacturer of the crane. In total, the Third–Party Complaint asserted claims against five Defendants: bus driver Fernando Manuel da Cunha Goncalves ("Goncalves"); Goncalves' employer and tour bus company Frota Azul; German crane manufacturer Liebherr Werk Ehingen Gmbh ("Liebherr"); crane truck driver Werner Deissenrieder; and Deissenrieder's employer, Gerber + Partner Gmbh ("Gerber"), an entity with which Liebherr contracted to deliver the crane to its Italian buyer.

presented, I considered the Third–Party Defendants' Motions in 02–K–806 under a Rule 56 standard and granted those filed on behalf of the individual drivers of the bus and crane truck. I reserved judgment on the Motions of the Portugese bus company and German crane manufacturer and delivery companies, and set those Motions for hearing together with the pending Motions of GVI for the dismissal of the non-U.S. citizen Plaintiffs in the two actions. Having now heard argument on each of these Motions, and being fully versed on the briefs and evidence submitted by the parties, I issue the following rulings:

## II. *THE PENDING MOTIONS.*

### A. *GVI's Motion for Dismissal or for Stay directed at non-U.S. citizen Plaintiffs in 02–K–806 and 03–K–1075.*

It is clear from the record and stipulated filings in this case that GVI knew, at least at the time this case was transferred to this court in April 2002, that the proposed Plaintiff Class was comprised of all of the passengers on the bus that crashed in Italy, including the 19 "foreign" Plaintiffs it now seeks to dismiss from these actions. That this knowledge supports a conclusion that GVI affirmatively waived its right to seek their dismissal in entering into the stipulation for transfer, or should be barred under the doctrines of estoppel or laches from doing so, is less clear,[2] and because it is unnecessary to my ruling on GVI's Motions, I decline to reach it.

The facts giving rise to GVI's assertion that the non-U.S. citizen Plaintiffs should be dismissed from these actions are that those Plaintiffs contracted with different Cosmos entities for their tour packages, not GVI. Specifically, the British and Malaysian citizens booked with British-based Cosmos Coach Tours (CCT) in England and the Australian citizens booked with Circuit Travel ("Circuit") in Australia. GVI contends CCT and Circuit operate separately and independently from GVI, and asserts GVI should not be held liable to passengers with whom it has no contractual relationship.

■ There is no dispute that the claims of the eight U.S.-citizen Plaintiffs in 02–K–806 against GVI are properly before the court. The case will proceed as to those Plaintiffs regardless of the outcome of this Motion. The question is whether the non-U.S. Plaintiff claims against GVI are also properly before this court, or whether, by virtue of forum selection clauses expressed or implied in their booking contracts with GVI-related entities CCT and Circuit, they are precluded from joining in this case and are affirmatively obligated to pursue such claims only against the entity with which they booked, and only in their country of residence. I cannot reach such a conclusion.

Under the facts alleged, GVI is the corporate entity behind Cosmos, a global tour and travel company with offices all over the world. GVI, through its affiliated entities in various countries all doing business under the "Cosmos" banner, contracts with individuals to provide tour services in Europe and elsewhere. I cannot interpret the contractual language cited by GVI in its papers as precluding any individual arguably injured by GVI or its related entities from suing GVI in Colorado. Indeed,

---

**2.** As GVI points out, it had reserved the right to challenge certification (albeit on different grounds) and could not, in any event, have sought the dismissal of the non-U.S. citizen passengers until after they were added in October 2002. GVI's assertion that it had no idea the Plaintiff Class could include all of the bus passengers and that it was blindsided by Plaintiffs' shift in tactics in filing the Second Amended Complaint, however, is not well taken as it is belied by GVI's own statements in the case as early as May 17, 2002.

if it were not so transparent it would be ironic that GVI, a company headquartered in Colorado which secured a transfer of the action to Colorado on grounds California was too-inconvenient a forum in which to litigate Plaintiffs' claims, now seeks to litigate those same claims in three or more [3] forums rather than submit to a single proceeding on its home turf.

The only explicit contractual language cited is that found in the tiny print (8-point type) of the three-page "Cosmos Fair Trading Charter," included as "Important Information" in the booking documents given to passengers booking with U.K.-based CCT. Passengers are not required to sign the Charter, only to "please read carefully as it sets out the booking conditions for your holiday."

The Charter is divided into two sections, one entitled "Our Commitment to You," and the other entitled "Your Commitment to Us." The language at issue is found in paragraph 8 of the Section entitled "Our Commitment to You," which I set forth in its entirety (and in its actual size and relative spacing) below:

8. **OUR COMPLAINTS PROCE-DURE.** We will always do our best to sort out any complaints you may have amicably. If, however, we are unable to agree, you may take your complaint to Arbitration under a special scheme set up with the Association of British Travel Agents and run independently by the Chartered Institute of Arbitrators. This scheme provides a simple and cheap way of sorting out complaints, and there is a limit on the costs which you might have to pay. The scheme does not apply if your claim is for more than L 1500 per person. There is also a limit

of L 7500 per booking form. Also, you can only choose to have your complaint dealt with in this way if it does not involve physical injury or illness, and you apply within nine months of your return from holiday (although in exceptional circumstances it may still be offered outside this period). Full details are available from ABTA at 66–71 Newman Street, London WIP 4AH. *We both agree that any dispute, claim or other matter which arises out of or in connection with your contract or holiday will be dealt with under the ABTA Arbitration Scheme or by the Courts of England and Wales only (unless you are a resident of Scotland or Northern Ireland in which case you may take proceedings in the Courts of your own country).*

It is the italicized language that GVI contends constitutes a binding forum selection clause requiring passengers who booked with CCT pursuant to its terms to bring their claims only against CCT, and only in the U.K.

GVI's argument fails for numerous reasons, including, but not limited to, the following:

1. The forum selection clause is unenforceable against individual passengers absent any indication they bargained for, or expressly agreed to be bound by, the provision. There is no indication the purported forum selection clause was bargained for or explained to passengers, or that passengers were required to read or sign it. It is boilerplate language tucked away in the tiny print of an "informational" document given to passengers with their booking papers. Enforcement of a

---

**3.** If GVI's position is taken at face value, it is suggesting it would rather be sued by the American plaintiffs in Colorado, the British plaintiffs in England, the Australian Plaintiffs in Australia, the Malaysian Plaintiffs in Malaysia or England, and the Slovenian tour director in Slovenia, rather than risk a single action before the "famously generous juries" of the United States.

forum selection clause is unreasonable where the opposing party establishes fraud, undue influence or overreaching bargaining power with respect to the forum selection clause. *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In the instant case, the facts alleged, together with the Charter language on its face, gives rise to an inference of overreaching bargaining power fatal to GVI's Motion.

2. The forum selection language is ambiguous, not only in terms of whether it is mandatory or permissive as the parties argue, but also on the question of whether it applies to claims for personal injury in the first instance. By excepting from coverage complaints involving physical injury from the process and then failing affirmatively to state where physical injury claims must be filed, for example, the clause is ambiguous on the question of whether it even applied in this case.

Even if the clause were deemed applicable to Plaintiffs' personal injury claims, it cannot be discerned from the language used whether England/Wales as the chosen forum is permissive or mandatory. Set forth as it is in that section of the Charter describing "Our" commitment to "You" (where "our" and "we" is used in a manner that repeatedly refers to CCT/Cosmosair and "you" is specifically defined as the individual passenger(s) on the booking), it is by no means clear that *"[w]e both agree* that any ... claim ... which arises out of or in connection with your contract or holiday [will be dealt with via arbitration or the courts of England/Wales]" (emphasis added) means that the *passenger* is agreeing to file any personal injury action in England/Wales exclusively, or that *CCT/Cosmos,* consistent with their commitment to the passenger, are agreeing to answer personal injury claims in those forums.

If there is ambiguity in a forum selection clause, it should be construed against the drafter. *Milk "N" More, Inc. v. Beavert,* 963 F.2d 1342, 1344 (10th Cir.1992)(citing *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 957 (5th Cir.1974))(construing forum selection clause against drafter). When construed against Cosmos/CCT in this case, the clause at issue does not apply to personal injury claims or, if it does, its forum selection provision is permissive.

3. Even if the clause could be said to apply to claims for personal injury and constitute an agreement by passengers to bring their claims in the U.K., it does not provide that those courts are the "exclusive forum" in which claims can be brought, and that passengers are therefore precluded from joining in a case already pending in another jurisdiction involving precisely the same facts and circumstances. And even in that case, such a clause could be deemed unenforceable if it would result in the litigation of the same issues in different forums, risk depriving parties of their right to sue by operation of statutes of limitations or other procedural bars to suit, or otherwise result in negative public policy ramifications from its enforcement. *See Prows v. Pinpoint Retail Sys., Inc.,* 868 P.2d 809, 813 (Utah 1993)(litigating the same issues in two trials "contravenes the 'objective of modern procedure,' which is to 'litigate all claims in one action if that is possible'" rendering enforcement of otherwise valid clause unreasonable)(internal citation omitted).

Under the circumstances of this case, the language urged by GVI to constitute a mandatory forum selection clause requiring the passengers who booked with CCT to pursue their claims in England only is unenforceable. The language is ambiguous and, if construed against CCT/Cosmos, is either ineffective as a forum selection

clause in its entirety or is permissive, rather than mandatory. Alternatively, even if it could be said to give rise to a mandatory forum selection clause, it would be unreasonable under the facts of this case to enforce it. Specifically, I am being urged to enforce an ambiguous forum selection clause by a party (GVI) claiming to be completely independent of the entity (CCT) to whose benefit the clause ostensibly inures, so that GVI can defend claims arising from a single accident in two, three, or even five different forums. This I decline to do. GVI's Motion for Dismissal of Foreign Plaintiffs is DENIED. The "alternative" Motion for Stay so the foreign Plaintiffs can pursue their claims in their respective home countries, is also DENIED.

### B. The Third–Party Motions to Dismiss in 02–K–806.

#### 1. Legal Standard.

■ When the court's jurisdiction over a particular party or parties is contested, it is the plaintiff that has the burden of proving it exists. *McNutt v. General Motors,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). As set forth in my December 10 Order and because the completion of jurisdiction-related discovery has allowed the presentation of matters outside the pleadings in support of jurisdiction, Third–Party Defendants' Motions are treated as motions for summary judgment and disposed of as provided in Rule 56. *See* Fed.R.Civ.P. Rule 12(c)(when matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.)

■ To establish personal jurisdiction over a nonresident defendant in a diversity case, plaintiff must show both that jurisdiction is legitimate under the forum state's long-arm statute and that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 455 (10th Cir.1996). For the first step of the analysis, I turn to Colorado's long-arm statute, which establishes personal jurisdiction over defendants who, either in person or by an agent, engage in various activities within the state including the transaction of business. *See* Colo.Rev.Stat. § 13–1–124(1)(a)–(b) (1999). Because this statute extends Colorado's jurisdiction to the limit of the federal constitution, *see Dart International, Inc. v. Interactive Target Systems, Inc.,* 877 F.Supp. 541, 543 (D.Colo.1995) (citing *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968)), the "only concern is whether . . . maintenance of the suit . . . would . . . offend the due process clause of the Fourteenth Amendment." *Kuenzle* at 455 (quoting *Shanks v. Westland Equip. & Parts Co.,* 668 F.2d 1165, 1167 (10th Cir.1982)).

Under these standards, I conclude the Motions of Gerber and Liebherr to Dismiss GVI's Third–Party Complaint against them in 02–K–806 should be GRANTED, and the Motion of Frota Azul DENIED.

#### 2. Gerber.

■ As GVI essentially conceded at oral argument, there is no evidence of Gerber having any contacts with Colorado, minimal or otherwise. Because there are no facts from which to infer the existence of personal jurisdiction over Gerber, Gerber's Rule 12(b)(2) Motion to Dismiss is GRANTED.

#### 3. Liebherr.

■ GVI seeks to establish general jurisdiction over Liebherr by pointing to certain sales of Liebherr machinery in Colorado by its distributor, Schiller International.

Even assuming, for the sake of argument, that *Kuenzle v. HTM Sport* provides an appropriate analogy for determining whether the acts of a distributer may be imputed to a foreign manufacturer for purposes of general jurisdiction,[4] the facts presented by GVI do not give rise to an inference either that *Kuenzle* applies or that Schiller actually had systematic contacts with Colorado at the time of the accident.

Addressing the question of whether the systematic contacts of an American distributor of ski bindings could be imputed to the bindings' Austrian manufacturer for general jurisdiction purposes, the Tenth Circuit in *Kuenzle* ruled they could not absent evidence establishing a general agency relationship between the manufacturer and the distributor. *Kuenzle*, 102 F.3d at 459 & n. 9 (where record failed to establish the elements of control and consent required of any express or implied agency relationship, acts of distributor in forum jurisdiction would not support the exercise of personal jurisdiction over the manufacturer.) Thus, even if Schiller's limited pre-suit contacts with Colorado could be said to be sufficient to confer general jurisdiction over Schiller, such jurisdiction could not be imputed to Liebherr absent evidence that Schiller and Liebherr were in an actual agency relationship at the time, which GVI has not provided. GVI's contention that Liebherr may be acquiring Schiller and therefore be commencing direct contacts with Colorado in the coming weeks does not alter this analysis.

The pertinent time period for any acts of Schiller being attributed to Liebherr would have been the time the complaint was filed. *See Kuenzle* at 459, n. 9; *accord United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F.Supp.2d 904, 910 (N.D.Ill.1999)(post-suit activities cannot serve to warn the defendant of an event that has already occurred). Because the facts surrounding Schiller's pre-suit relationship with Liebherr are that any distribution relationship ended nearly two years before the Complaint was filed in this case (and more than a year before the accident), that relationship, by itself, is insufficient to establish minimum contacts necessary for personal jurisdiction. Any post-suit contacts of Schiller, similarly, cannot be used as a basis for exercising personal jurisdiction over Liebherr at the time the Complaint was originally filed in December 2001. Accordingly, the Motion of Liebherr to Dismiss for lack of personal jurisdiction must be GRANTED.

### 4. *Frota Azul*

■ Given my findings for purposes of the instant motions that GVI/Cosmos is a unified, privately held, global entity with offices around the world, I have reconsidered my preliminary determination that the contract between Frota Azul and Tourama is an insufficient basis on which to exercise jurisdiction over Frota Azul in Colorado. In that contract, Frota Azul

---

4. I note that in *Kuenzle,* the ski bindings that gave rise to the plaintiffs' cause of action, while purchased in Switzerland, were worn and failed in Wyoming, the forum state. The question was whether the systematic Wyoming contacts of an independent distributor of the bindings could be imputed to the binding manufacturer for purposes of general jurisdiction. (In the absence of a general agency relationship between the manufacturer and distributor at the time of the accident, the answer was they could not.) Here, there is no nexus between the crane involved in the accident and Colorado. To say a manufacturer of ski bindings that are distributed in Wyoming may be on notice that a set of its bindings purchased in Switzerland might injure someone in Wyoming is different from saying that a crane manufacturer whose machinery is distributed in Colorado should be on notice that one of its cranes could hurt someone in Italy who then might sue in Colorado.

made certain representations of care intended to inure to the benefit of Tourama, defined as "COSMOS," and its "associated companies and agents" also defined in the contract as "Cosmos." Frota Azul also agreed to indemnify "COSMOS" and "its associated companies and agents" in relation to "any claims which may be made against Cosmos as a result of the negligence of [Frota Azul] or of any failure by [Frota Azul] to observe the [contracted-for minimum standards]." Because I view GVI and Tourama as associated Cosmos companies for purposes of these Motions, I find the Tourama contract sufficient to put Frota Azul on notice that it might be called by an "associated Cosmos company" to defend a claim arising under that contract. Accordingly, I DENY the Motion of Frota Azul to Dismiss GVI's Third–Party claims against it.

## III. *CONCLUSION.*

Based on the foregoing, IT IS ORDERED that GVI's Motion for Dismissal or for Stay directed at non-U.S. citizen Plaintiffs in 02–K–806 and 03–K–1075 is DENIED. IT IS FURTHER ORDERED that the Motions to Dismiss of Third–Party Defendants Gerber and Liebherr in 02–K–806 are GRANTED, and the Motion to Dismiss of Third–Party Defendant Frota Azul in 02–K–806 is DENIED. The remaining parties shall file a Status Report on the status of discovery on or before April 15, 2004, which should include specific requests and suggestions for modifying the existing Scheduling Order, including the incorporation of any discovery in consolidated case 03–K–1075. The court may order that an Amended Scheduling Order be filed thereafter.