5 F.3d 28
 1994 A.M.C. 42
 SUNBELT CORPORATION; Sunbelt Enterprises; Cemex, S.A.;
and Eagle Cement, Inc., Petitioners,
v.
NOBLE, DENTON & ASSOCIATES, INC. and Phillyship, Inc., Respondents,
Honorable Clarence C. Newcomer, United States District Judge
for the Eastern District of Pennsylvania, Nominal
Respondent.
 No. 93-1345.
 United States Court of Appeals,
Third Circuit.
 Argued July 13, 1993.
Decided Sept. 14, 1993.
 
 A. Robert Degen (argued), Krusen, Evans & Byrne, Philadelphia, PA, for petitioners.
 Richard Q. Whelan (argued), Palmer, Biezup & Henderson, Philadelphia, PA, for respondent Phillyship, Inc.
 Peter A. McLauchlan, Janet M. Williams (argued), Meyer, Orlando & Evans, P.C., Houston, TX, George N. Styliades, Styliades & Mamas, Cherry Hill, NJ, for respondent Noble, Denton & Associates, Inc.
 BEFORE: SLOVITER, Chief Judge, NYGAARD and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Senior Circuit Judge.
 
 
 1
 Sunbelt Corporation, a Texas corporation; Sunbelt Enterprises, a Texas corporation; Cemex, S.A., a Mexican corporation; and Eagle Cement, Inc., a Delaware corporation, (collectively "petitioners") seek a writ of mandamus under 28 U.S.C. Sec. 1651 ordering the district court to vacate its order transferring their underlying action in the district court to the Southern District of Texas. Respondent Noble, Denton & Associates, Inc. ("Noble Denton"), a defendant, asks that we uphold the district court's transfer order and requests in the alternative that we instruct the district court to sever the action so that petitioners' claims against it can be transferred to the United States District Court for the Southern District of Texas.
 
 I. BACKGROUND
 
 2
 Petitioners instituted the underlying breach of contract and negligence action against Noble Denton, a Texas corporation, and Phillyship, Inc. ("Phillyship"), a Pennsylvania corporation, seeking compensation for damages allegedly caused to their cargo (a modular ship and cement unloader) by, inter alia, Noble Denton's failure to design adequately a seafastening plan and Phillyship's failure to perform proper engineering and rigging services prior to the transportation of the cargo from Philadelphia to San Diego.
 
 
 3
 Petitioners' complaint alleged that "one or more of them" entered into a contract with Noble Denton under which Noble Denton was to develop a stability and seafastening plan for loading the cargo.[1] Phillyship was not a party to this contract. Sunbelt entered into a separate contract with Phillyship whereby Phillyship would execute the plan to be developed by Noble Denton. This contract was sought by Sunbelt and negotiated and executed in Philadelphia. All work under this contract was performed under Noble Denton's supervision in Philadelphia.
 
 
 4
 After answering the complaint, Noble Denton moved to transfer the action under 28 U.S.C. Sec. 1404(a) to the Southern District of Texas, based primarily on a forum selection clause contained in the contract between Sunbelt and Noble Denton.[2] The district court granted this motion and thereafter denied petitioners' and Phillyship's motions for reconsideration. Petitioners then filed this petition for a writ of mandamus.[3]
 
 II. JURISDICTION
 
 5
 The district court possessed admiralty and maritime jurisdiction of the underlying action under 28 U.S.C. Sec. 1333. Generally, "orders transferring venue are not immediately appealable." Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 228 (3d Cir.1990); see McCreary Tire & Rubber Co. v. Ceat, S.p.A., 501 F.2d 1032, 1034 (3d Cir.1974) ("An order transferring an action pursuant to 28 U.S.C. Sec. 1404(a) ... is interlocutory and unappealable under Sec. 1291.").[4] Mandamus is therefore the appropriate mechanism for reviewing an allegedly improper transfer order. See Bloom v. Barry, 755 F.2d 356, 357 (3d Cir.1985); Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 168-69 (3d Cir.1982); Shutte v. Armco Steel Corp., 431 F.2d 22, 23 (3d Cir.1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). We have plenary review of the legal determinations underlying the district court's transfer order. See In re School Asbestos Litig., 977 F.2d 764, 778 n. 15 (3d Cir.1992).
 
 III. MANDAMUS
 
 6
 Our review of the district court's transfer order on a petition for a writ of mandamus is governed by familiar principles. A writ of mandamus is an extraordinary remedy, the issuance of which is generally committed to the sound discretion of the issuing court. Carteret, 919 F.2d at 232-33; In re School Asbestos Litig., 977 F.2d at 772. A writ will only issue when the party seeking the writ has no other adequate means of obtaining the relief sought. Carteret, 919 F.2d at 232-33. We have held that the possibility of an appeal in the transferee forum following a final judgment there is not an adequate alternative to obtain the relief sought. See Carteret, 919 F.2d at 233. Thus, petitioners have met this prerequisite to obtaining a writ of mandamus.
 
 
 7
 Generally, a writ will only issue if the district court did not have the power to enter the order, and then "only if the party seeking the writ meets its burden to demonstrate that its right to the writ is clear and indisputable." Id. at 232. Thus, we turn to whether or not the district court had the power to transfer this action.
 
 
 8
 Petitioners allege that mandamus is warranted here because (1) the district court erred in concluding that Phillyship is subject to personal jurisdiction in Texas; and (2) the district court abused its discretion in transferring the action on the basis of a forum selection clause contained in a contract to which Phillyship was not a party. As the parties concede, if we find that Phillyship is not amenable to process in the Southern District of Texas we will not need to reach the second issue.
 
 A. Transfer Under 28 U.S.C. Sec. 1404(a)
 
 9
 Section 1404(a) provides that a district court "[f]or the convenience of parties and witnesses [and] in the interest of justice ... may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. Sec. 1404(a).
 
 
 10
 Petitioners assert that mandamus is warranted because Phillyship is not subject to personal jurisdiction in Texas, thus the Southern District of Texas is not a district in which the action "might have been brought."[5]
 
 
 11
 The district court, in its order denying petitioners' and Phillyship's motions for reconsideration, stated that "third-party defendant Phillyship has sufficient minimum contacts with Texas for a Texas court to exercise personal jurisdiction over it."[6] We turn to the soundness of that ruling.
 
 
 12
 Under Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir.1993). Jurisdiction over a nonresident who does business in Texas is authorized under Texas' Long Arm Statute. See Tex. Civ.Prac. & Rem.Code Ann. Sec. 17.042 (Vernon 1986). The Texas Supreme Court has held that the statute's broad language allows the exercise of jurisdiction "to reach as far as the federal constitutional requirements of due process will allow." Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.1991); U-Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760, 762 (Tex.1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Thus, the well-established minimum contacts analysis governs our resolution of this issue.
 
 1. Specific Jurisdiction
 
 13
 Noble Denton primarily advances specific jurisdiction as the basis for finding that Phillyship is subject to personal jurisdiction in the Southern District of Texas.
 
 
 14
 The Supreme Court of Texas has adopted a formula to aid courts in determining whether the assertion of personal jurisdiction over a nonresident defendant is proper under the federal constitutional requirements. See Guardian Royal, 815 S.W.2d at 229-32; Schlobohm v. Schapiro, 784 S.W.2d 355, 358 (Tex.1990).
 
 
 15
 First, the nonresident defendant must have purposefully established "minimum contacts" with Texas. There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas....
 
 
 16
 Second, the assertion of personal jurisdiction must comport with fair play and substantial justice.
 
 
 17
 Guardian Royal, 815 S.W.2d at 230-31 (footnotes omitted).
 
 
 18
 The undisputed contacts relied upon by Noble Denton and apparently found sufficient by the district court were: (1) Phillyship's contract with Sunbelt, a Texas corporation; and (2) post-contract telephone and facsimile contacts by Phillyship with Noble Denton.[7]
 
 
 19
 We must determine whether or not these contacts are sufficient to support the district court's conclusion that Phillyship "purposefully availed" itself of the privilege of doing business in Texas. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985). We note at the outset that unilateral contacts by the party asserting the existence of personal jurisdiction are insufficient. Guardian Royal, 815 S.W.2d at 227. Under a specific jurisdiction analysis, in order for the exercise of personal jurisdiction to be proper the cause of action must arise from or be related to Phillyship's contacts with Texas. Id.; see Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984).
 
 
 20
 Noble Denton's reliance on the contract between Phillyship and Sunbelt as a "purposeful contact" fails. Although Noble Denton was not a party to this contract, it, nevertheless, asserts that the cause of action arises out of this contract and that the contract therefore is a sufficient contact. It is well established, however, that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite "minimum contacts" required for an exercise of personal jurisdiction over the nonresident. See Burger King, 471 U.S. at 478, 105 S.Ct. at 2185; Colwell Realty Invs., Inc. v. Triple T Inns, Inc., 785 F.2d 1330, 1334 (5th Cir.1986) (noting that under the facts before it, "merely contracting with a resident of the forum state [was] insufficient ... to subject the nonresident [defendant] to the forum's jurisdiction"); U-Anchor, 553 S.W.2d at 761-64 (holding that nonresident defendant whose only contacts with Texas were contract with Texas plaintiff and remittance of payments to Texas lacked minimum contacts where contract was solicited, negotiated and executed in Oklahoma). Thus, the contract between Phillyship and Sunbelt is insufficient to support personal jurisdiction over Phillyship in Texas.
 
 
 21
 Noble Denton's reliance on communications between itself and Phillyship is similarly misplaced. Its argument is based on an affidavit in which one of its employees asserts that he received "several" telephone calls from Phillyship employees regarding the seafastening plan Noble Denton was designing under its contract with Sunbelt. Noble Denton also relies on a series of facsimiles that it sent to Phillyship in response to the above telephone calls. These facsimiles outline the seafastening plan that Phillyship was under contract with Sunbelt to implement. Noble Denton was contractually bound to Sunbelt to provide the seafastening plan to Phillyship. We conclude that these informational communications in furtherance of that contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over Phillyship. See Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir.1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws").
 
 
 22
 Noble Denton relies on Siskind v. Villa Foundation for Education, Inc., 642 S.W.2d 434 (Tex.1982) and Memorial Hospital System, Inc. v. Fisher Insurance Agency, Inc., 835 S.W.2d 645 (Tex.Ct.App.1992) as support for its conclusion that Phillyship had sufficient contacts for a Texas court to assert personal jurisdiction over it. These cases, however, are factually distinguishable.
 
 
 23
 Noble Denton cites Siskind for the proposition that "[a] non-resident defendant with no physical presence in Texas may nevertheless be subject to the personal jurisdiction of a Texas court, where it is shown that the non-resident defendant initiated communications by telephone, from outside of Texas and directed into Texas, which have resulted in damage to a plaintiff in Texas."
 
 
 24
 While this proposition accurately reflects the Siskind decision, it is inapplicable to the facts before us.[8] Siskind involved a suit for, inter alia, misrepresentation and violations of the Texas Deceptive Trade Practices Act. The contacts in Siskind were found sufficient because it was during these contacts that the alleged misrepresentations, the basis of the suit, occurred. Siskind, 642 S.W.2d at 436-37. Our case, in contrast, involves a suit for negligence and breach of contract. The telephone calls allegedly made by Phillyship are not the basis of the cause of action.[9] Thus, Noble Denton's reliance on Siskind is inapposite.
 
 
 25
 Similarly, Memorial Hospital involved alleged fraudulent misrepresentations made during a single telephone call. Memorial Hospital, 835 S.W.2d at 648. The court found this one contact to be sufficient for the assertion of specific jurisdiction because the "contact with Texas itself was the basis for the cause of action." Id. at 650. Thus, there was a substantial connection between the contact in the forum and the cause of action. Id.
 
 
 26
 The contacts relied upon by Noble Denton, whether considered individually or collectively, are insufficient to establish specific jurisdiction[10] over Phillyship, thus the Southern District of Texas is not a jurisdiction in which the action "might have been brought." Accordingly, the district court lacked the authority to transfer this case under 28 U.S.C. Sec. 1404(a) and the writ must issue.
 
 IV. SEVERANCE
 
 27
 Having concluded that the district court lacked the power to transfer this case to the Southern District of Texas due to the absence of personal jurisdiction over Phillyship, we must address Noble Denton's alternative request that we instruct the district court to sever the claims against it from those against Phillyship so as to allow them to proceed in the Southern District of Texas. We question our authority to grant such relief on a petition for a writ of mandamus. However, assuming without deciding that the district court has the power to sever the claims against Phillyship and grant transfer as to Noble Denton, we nevertheless conclude that severance would be inappropriate in this case. See In re Fine Paper Antitrust Litig., 685 F.2d 810, 819 (3d Cir.1982) (recognizing that "venue defects as to a party whose portion of the action has been severed do not bar transfer of the remainder of the action"), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983).
 
 
 28
 We agree with the Fifth Circuit Court of Appeals' statement in Liaw Su Teng v. Skaarup Shipping Corp., 743 F.2d 1140, 1148 (5th Cir.1984), that "[the court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." See Wyndham Assoc. v. Bintliff, 398 F.2d 614, 618 (2d Cir.) (stating that severance and transfer may be used "in cases where ... the defendants [seeking to avoid transfer] are alleged to be only indirectly connected to the ... main subject matter of the action" and "where the administration of justice would be materially advanced"), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).
 
 
 29
 In this case, Noble Denton does not contend that Phillyship is only "indirectly connected" to the litigation. Rather, the issue of Phillyship's alleged negligence and/or breach of contract is central to the ultimate determination as to responsibility for the alleged damage to petitioners' cargo.[11] To grant severance here would place each defendant in the position of being able to defend by asserting the absent party's negligence. We refuse to encourage a result which in our view hampers rather than furthers the administration of justice. We conclude here that it would not be consistent with a sound exercise of discretion for the district court to grant severance in this case.[12] Thus, contrary to Noble Denton's request, we will not instruct the district court to grant severance.
 
 
 30
 A writ of mandamus will be granted directing the district court to vacate its transfer order.
 
 
 
 [1]
 The written contract is, by its terms, between Sunbelt and Noble Denton
 
 
 [2]
 The forum selection clause provides:
 This agreement shall be governed and interpreted in accordance with applicable law of the United States and the State of Texas. In case of dispute not otherwise resolved both parties hereto consent to the jurisdiction of the U.S. Courts within the Southern District of Texas.
 
 
 [3]
 Phillyship supports the issuance of a writ but did not join in the petition
 
 
 [4]
 An exception exists where the transfer order is sufficiently final, for example when the transfer order "effectively terminate[s] the case in the federal courts." Carteret, 919 F.2d at 229 n. 7
 
 
 [5]
 Respondent Phillyship also argues that the suit could not have been brought in Texas because there is no statutory venue under 28 U.S.C. Sec. 1391(b) in Texas. The district court's jurisdiction in this action, as all parties agree, is based solely on maritime jurisdiction under 28 U.S.C. Sec. 1333. As such, under Fed.R.Civ.P. 82, the statutory venue provisions of 28 U.S.C. Sec. 1391(b) are inapplicable. See 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 3142 (1973) (stating that admiralty and maritime claims "[are] not regarded as ... civil action[s] for purposes of the general venue statutes and the traditional admiralty rules of venue ... apply"). "An admiralty action may be brought against a corporation in any United States District Court which can obtain personal jurisdiction over that corporation." Ocean Science & Eng'g, Inc. v. International Geomarine Corp., 312 F.Supp. 825, 829 (D.Del.1970). Thus, our resolution of the correctness of the district court's determination that Phillyship is subject to personal jurisdiction in Texas will also resolve whether or not the Southern District of Texas is a proper venue
 
 
 [6]
 It is agreed that Phillyship is not a "third-party defendant." It is named as a defendant in the original complaint
 
 
 [7]
 The only other contact relied upon by Noble Denton is a magazine advertisement received by Noble Denton's counsel that is admittedly not related to the underlying litigation and thus not supportive of specific jurisdiction
 
 
 [8]
 Siskind was a suit for misrepresentation by the parents of a student who had been expelled from a nonresident educational institution. Siskind, 642 S.W.2d at 434. Villa Foundation, the nonresident defendant, solicited business in Texas through advertisements in several national publications and local telephone directories. These contacts, plus various mailings and telephone communications associated with application, enrollment, and billing, led the court to conclude that Villa affirmatively sought business in Texas. Id. at 436
 
 
 [9]
 The claims advanced by Sunbelt against Phillyship in its complaint and the claims advanced by Noble Denton in its cross-claim both refer to Phillyship's alleged failure in rigging, installing, stowing, etc. All of this work was done in Philadelphia
 
 
 [10]
 In its memorandum filed in the district court in opposition to the motions for reconsideration, Noble Denton asserted that there were sufficient contacts to satisfy "either specific or general jurisdiction." At oral argument before us, counsel for Noble Denton stated that she was not "arguing" general jurisdiction but nevertheless did "not want to waive" that position to the extent it was argued in her brief. The contacts we have found insufficient to support specific jurisdiction also fail to establish general jurisdiction inasmuch as Noble Denton has not demonstrated that Phillyship has continuous and systematic business contacts with Texas. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984). To the extent Noble Denton also relies on a single advertisement in a national publication received by its counsel, this is insufficient to establish the requisite contacts. See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir.1982)
 
 
 [11]
 Noble Denton asserts in its answer and cross-claim against Phillyship that Noble Denton "fully and adequately performed its duties to Sunbelt" and that any damage was caused by, inter alia, Phillyship's negligent implementation of Noble Denton's seafastening plan
 
 
 [12]
 Having reached this conclusion, we do not address the district court's transfer analysis as applied to Noble Denton