**Donna AFFLERBACH, Plaintiff,**

v.

**CUNARD LINE, LTD., Defendant.**

**No. 97–CV–245–J.**

United States District Court,
D. Wyoming.

July 16, 1998.

Charles Michael Aron, Karan Karla Tull, Aron & Hennig, Laramie, WY, for Plaintiff.

Corinne E. Rutledge, Louis Piccioni, Lathrop & Rutledge, Cheyenne, Karen C. Hilderbrandt, Kirlin Campbell & Keating, New York City, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT AS TIME–BARRED AND/OR TRANSFERRING THIS ACTION PURSUANT TO THE FORUM SELECTION CLAUSE IN THE CUNARD PASSAGE CONTRACT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

#### I. Introduction

This matter is before the court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Summary Judgment Dismissing Plaintiff's Complaint as Time–Barred and/or Transferring this Action Pursuant to the Forum Selection Clause in the Cunard Passage Contract and on Plaintiff's Motion for Partial Summary Judgment.

Plaintiff brings a complaint in Admiralty and alleges she was injured during a cruise as a result of the ship's owner's negligence. The pending motions require the court to determine if it has personal jurisdiction over the defendant cruise ship owner.

#### II. Undisputed Jurisdictional Facts

Plaintiff, Donna Afflerbach, is a Wyoming resident. She and her husband were passengers aboard the cruise ship Crown Dynasty from February 24, 1995, to March 8, 1996, as part of an air-sea transcanal tour (tour). This tour was "through the [University of Wyoming] Alumni Association." Pl.'s Aff. at ¶ 2. It included air travel from Denver, Colorado, to Fort Lauderdale, Florida, a cruise on the Crown Dynasty through the Panama Canal to Acapulco, Mexico and return air travel to Denver.

The cruise ship, the Crown Dynasty, is owned by defendant Cunard Line Limited Cunard). Cunard is a British corporation with offices in New York City, New York. Cohen Aff. ¶ 5. Other than its New York City office, Cunard has no other offices in the United States. *Id.* Cunard has no office, employees, bank accounts or phone numbers in Wyoming. *Id.* ¶ 7. It is not authorized, licensed or registered to do business in the state of Wyoming. *Id.* ¶ 6. Cunard advertises nationally in the United States to independent travel agents who sell its cruises. *Id.* ¶ 8. Cunard has not advertised its cruises directly in Wyoming. *Id.*

Vantage Travel is an independent travel agent and tour operator located in Brookline, Massachusetts. Broderick Aff. ¶ 2. It is not a corporate subsidiary or affiliate of Cunard. *Id.* It is a direct mail marketing company and provides group travel services to members of nonprofit organizations. It is completely independent of all of the railroads, airlines and shipping companies from whom it reserves space on behalf of its clients. *Id.* Thus, it is entirely independent from Cunard. *Id.* Vantage organized the Tour and through the auspices of the Wyoming Alumni Association it advertised the tour to the Afflerbachs. *Id.* ¶ 2. The Afflerbachs' Reservation Form is titled "University of Wyoming Alumni Association presents 12–Day Transcanal Cruise." Pl.'s Ex. 4. It identifies Vantage Travel as the organization arranging the reservations. It provides Vantage's toll-free number for reservations and also provides that reservations forms can be returned to the University of Wyoming Alumni Association at a Laramie, Wyoming address. The Reservation Form identifies the cruise ship as the "Cunard Crown Dynasty" as the cruise ship in two places. The Reservation Form does not provide any information on how to contact Cunard directly. Tour information received by plaintiff clearly identifies the Tour as being offered through Vantage and touts the "Vantage Exclusive Features." Pl.'s Ex. 5. The Tour information identifies the cruise ship as the "Cunard Crown Dynasty" or as the "Crown Dynasty," but provides no information on contacting Cunard directly.

The Afflerbachs booked the Tour through Vantage. Vantage then booked the Afflerbach's reservations with Cunard on August 25, 1995. Brand Aff. at ¶ 6. On February 5, 1996, Cunard issued cruise and air tickets and Passenger Contracts for the Afflerbachs and mailed those tickets by Federal Express to a travel agent at Vantage Travel in Brookline, Massachusetts. *Id.* ¶ 10. Cunard's Passenger Contracts contain a forum selection clause specifying that all litigation shall be litigated in the City and State of New York to the exclusion of all other jurisdictions and that all suits for bodily injury against Cunard shall be commenced within one year.

The Afflerbachs received their air tickets from Vantage. The air tickets had a cover decorated with Cunard's name and logo. Plaintiff's air ticket was issued to "Cunard Line Ltd" and "Client Afflerbach/Donna Mrs."

The Afflerbachs also received from Vantage a "Cruise Invoice" that identified the tour as "Transcanal 12–Day Cunard Crown Dynasty 1996 Group University of Wyoming." The Cruise Invoice provides Vantage's name and address but not Cunard's name or address.

Vantage's Reservation Form and its cruise invoice sent to the Afflerbachs contain identical "Tour Participation Agreement–General Terms and Conditions" that state as follows:

**Responsibility**: VANTAGE, its affiliated and subsidiary companies, sponsoring organizations and agents (collectively, VANTAGE) *act only as agents for the suppliers of transportation,* accommodations, food and other goods and services provided to the tour participant. All arrangements for transportation, accommodations and services are made upon the express condition that VANTAGE shall not be liable for any direct, indirect, consequential or incidental damages, injury, loss, accident, delay or irregularity of any kind occasioned by reason of any act or omission beyond its control, including without limitations, any act of negligence or breach of contract of any third party such as an airline, cruise line, train, hotel, restaurant, ground handler, etc., who is to or does supply any goods or services for the tour.... *Any litigation concerning this tour must be brought in the Commonwealth of Massachusetts....*

Pl.'s Ex. 3 and 4 (underlined emphasis added).

Plaintiff alleges that during a stop at Georgetown, Grand Cayman Island, on February 27, 1996, she lost her footing while disembarking and fell, injuring her buttocks, elbow and right shoulder. On October 15, 1997, she filed the present action as a complaint in admiralty pursuant to 28 U.S.C. § 1333. She alleges Cunard was negligent in failing to provide a competent ship's physician, failing to provide safe means of debarkation, and failing to provide reasonable assistance to the passengers. Complaint ¶¶ 10–13. She seeks $8,115 in medical damages and $100,000 in pain, suffering and general damages.

### III. Disputed Fact

There is a genuine issue of fact on whether the Afflerbachs received the Passage Contracts issued in their names by Cunard. Cunard has submitted evidence to show that it issued the Afflerbachs Passage Contracts and mailed them to Vantage. Toemmervik Aff. at 8–10; Broderick Aff. at ¶ 4. Its evidence supports its position that the Afflerbachs turned in their Passage Contracts as they embarked on the cruise. Toemmervik Aff. at 4–7; Brand Aff. ¶ 11.

However, the Afflerbachs have submitted conflicting evidence to show that they, and at least one other passenger, did not receive Cunard's Passage Contracts. Pl.'s Ex. A ¶ 5; Pl.'s Ex. B ¶ 5; Pl.'s Ex. C ¶ 3.

### IV. Motions

Defendant Cunard moves to dismiss pursuant to Fed.R.Civ.P. 12(b) for lack of personal jurisdiction. It also moves for summary judgment pursuant to Fed.R.Civ.P. 56, on the basis that the complaint is time barred because it was not filed within one year following the alleged injury. In the alternative, Cunard moves to dismiss or transfer venue pursuant to the forum selection clause set forth in its Passage Contract.

In response, plaintiff moves for partial summary judgment that the private limitations period and forum selection clauses are not enforceable because she never received the Passage Contract.

### V. Motion to Dismiss

Defendant moves to dismiss based upon its contention that this court lacks personal jurisdiction.

■ Plaintiff brings this action based upon this court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333.[1] "An admiralty action may be brought against a corporation in any United States District Court which can obtain personal jurisdiction over that corporation." *Sunbelt Corporation v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 31 n. 5 (3rd Cir.1993) (quoting *Ocean Science & Eng'g, Inc. v. International Geomarine Corp.*, 312 F.Supp. 825, 829 (D.Del.1970)).

> Under Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits.

*Id.*

Thus, because this court may exercise personal jurisdiction over the non-resident defendants to the extent permitted by the law of the state in which it sits, this court looks to personal jurisdiction under Wyoming's long-arm statute to determine if it has personal jurisdiction over defendant in this admiralty case. In this case, as in *Sunbelt*, the "well-established minimum contacts analysis"—an analysis familiarly applied in the context of diversity jurisdiction—applies to determine if defendant is subject to personal jurisdiction in this case. 5 F.3d at 31 (applying Texas' long-arm statute to determine personal jurisdiction in admiralty case). The

---

1. An issue not raised by defendant is whether this court has admiralty jurisdiction over an alleged accident which occurred in the territorial waters of another nation—the Caymans are a British protectorate. *See Dunham v. Hotelera Canco S.A.*, 933 F.Supp. 543 547 (E.D.Va.1996) (Finding no admiralty jurisdiction over tort which occurred during cruise in territorial waters of Mexico because "[f]ederal maritime jurisdiction applies to the navigable waters of the United States and the 'high seas,' but does not extend into the territorial waters of other nations."); *Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 448 (S.D.N.Y.1988) (no federal admiralty jurisdiction where alleged tort occured in Vancouver, British Columbia, outside navigable waters of the United States).

well-established minimum contacts analysis has been explained as follows:

In *International Shoe Co. v. Washington,* the Supreme Court held that:

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

362 U.S. 310, 316 (1945) (citations omitted). The *International Shoe* "minimum contacts" standard may be met in either of two ways. Specific jurisdiction—based on a matter occurring the forum state—exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. . . . In either case, the court must see to it that the exercise of jurisdiction " 'does not offend traditional notions of fair play and substantial justice.' " *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154) (further quotation omitted).

*Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996) (citing *Dobbs v. Chevron U.S.A., Inc.,* 39 F.3d 1064, 1067 (10th Cir.1994)).

The Tenth Circuit has discussed application of Wyoming's long-arm statute:

> The Wyoming statute incorporates the minimum contacts standards adopted in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and extends Wyoming court's jurisdiction to the limits of the due process clause. *First Wyoming Bank N.A., Rawlins v. Trans Mountain Sales and Leasing, Inc.,* 602 P.2d 1219, 1221 (Wyo.1979).

The Wyoming Supreme Court has construed the Wyoming long arm statute in light of *International Shoe,* and stated that the plaintiff must establish the existence of three criteria in order to demonstrate a basis for jurisdiction over a non-resident defendant:

> (1) The defendant purposefully availed itself of the privilege of acting within the forum state or of causing important consequences there:
>
> (2) The cause of action arises from the consequences in the forum state of the defendant's activities; and
>
> (3) The activities of the defendant or the consequences of those activities have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

*Markby v. St. Anthony Hospital Systems,* 647 P.2d 1068, 1073 (Wyo.1982). "[I]f the cause of action did not arise from the activities of the defendants in Wyoming, they are not amenable to service under the [Wyoming] long arm statute." *Cozzens v. Piper Aircraft Corp.,* 514 P.2d 1375, 1379 (Wyo.1973).

*Ten Mile Industrial Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1525 (10th Cir. 1987).

The Wyoming Supreme Court recently addressed the issue of personal jurisdiction in *O'Bryan v. McDonald,* 952 P.2d 636 (Wyo. 1998) (holding that resident mother's child support contract with non-resident father did not automatically establish father's sufficient minimum contacts to support exercise of personal jurisdiction).

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant[s]. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set

forth in the complaint to the extent they are uncontroverted by defendant's affidavits. *Behagen,* 744 F.2d at 733. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen,* 744 F.2d at 733.

*Ten Mile Industrial Park,* 810 F.2d at 1524.

Plaintiff does not contend that this court has general jurisdiction over defendant based on any "continuous and systematic contact" with the state. Instead, she contends that Cunard's acts, through its "agent" Vantage in obtaining her business are sufficient to establish specific jurisdiction. The three-part test, set forth above in the quote from *Ten Mile Industrial Park,* 810 F.2d at 1525, defines the outer limits of such specific jurisdiction. *Goodwin v. Hall,* 957 P.2d 1299, 1301 (Wyo. 1998).

Plaintiff contends that Vantage acted as Cunard's agent in Wyoming and therefore Vantage's solicitation of her business in Wyoming establishes sufficient contacts for this court to exercise specific jurisdiction over Cunard. As noted above, the jurisdictional facts are not disputed. Based upon those facts the court finds that it lacks personal jurisdiction over defendant.

■ It is true that marketing a product through a distributor who has agreed to serve as the sales agent in forum state may constitute the additional conduct needed to establish minimum contacts for the purposes of specific jurisdiction. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 458 (10th Cir.1996) (citing and quoting plurality opinion in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

An agency relationship is "the fiduciary relations which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *True v. Hi–Plains Eleva-*

*tor Mach., Inc.,* 577 P.2d 991, 999 (Wyo. 1978) (quoting RESTATEMENT (SECOND) OF AGENCY § 1 (1957)). "There can be no agency relationship unless the factual element of control is present." *Id.* at 999. An agency relationship cannot be presumed, but rather must be clearly demonstrated. *Sarchet v. Roach,* 62 Wyo. 97, 163 P.2d 185, 188 (Wyo.1945).

*Id.* 102 F.3d at 459 (discussing agency relationship in context of general jurisdiction).

In this case the sole evidence of the alleged agency relationship between Vantage and Cunard is Vantage's general disclaimer in its Tour Participation Agreement. Contrary to plaintiff's characterization, the Tour Participation Agreement does not represent that Vantage is Cunard's agent. Instead, it represents that Vantage acts "only as agents for the suppliers of transportation, accommodations, food and other goods and services provided to the tour participant." This general disclaimer appears aimed at limiting Vantage's liability to its own clients. Vantage's choice of words to describe its relationship to its customer is not determinative of Cunard's minimum contacts with Wyoming. Otherwise its disclaimer would give rise to personal jurisdiction in a remote Wyoming forum for each and every vendor who provided transportation, food, drink, laundry or other services to the tour participants—a theory which offends traditional notions of fair play.

■ It is well-settled that a travel agent acts as agent or "special agent" for the traveler for the purposes of that one transaction. *See Douglas v. Steele,* 816 P.2d 586, 589 (Okla.Ct.App.1991) (travel agent was not a disclosed agent of the company whose travel packages she sold to her customers but, rather, was an agent of the customers); *Das v. Royal Jordanian Airlines,* 766 F.Supp. 169, (S.D.N.Y.1991) (travel service was passenger's agent); *c.f. Manes v. Coats,* 941 P.2d 120, 123–24 (Alaska 1997) (finding no agency relationship between vacation reservations and referral service and its customer where no right to control).

■ This court does not find that a travel agent can never act in a dual capacity as

agent for both the traveler and the company whose travel packages it sells. What this court does find is that plaintiff has failed to met her burden of establishing that Vantage acted as Cunard's agent for the purposes of establishing specific jurisdiction. In this case there is insufficient evidence to show that Vantage was Cunard's agent in Wyoming such that Vantage's actions would give rise to personal jurisdiction against Cunard in Wyoming. There is no evidence that Cunard had any right to control Vantage. Instead, the evidence is that Vantage acted as an independent broker or contractor in selling the Tours.

■ The court finds that by nationally advertising its tours and selling those tours to Wyoming residents, Cunard did not purposefully avail itself of the privilege of acting within Wyoming or of causing important consequences here. Most importantly, the cause of action, negligence in the operation of the cruise ship, does not arise from the consequences in Wyoming of Cunard's selling cruise packages to Wyoming residents. This case is distinguishable from the liable cases cited by plaintiff where the alleged tortious activity was purposefully directed into the forum state.

Accordingly, the court finds that it lacks personal jurisdiction over Cunard and will grant its Motion to Dismiss.

### VI. Summary Judgment Motions

■ Although the court is dismissing the case on the basis of lack of personal jurisdiction, in the interest of a complete record in the event of an appeal, the court will rule on the pending motions for summary judgment on the issues forum selection and the time-bar. As noted above, there is a genuine issue of fact on whether plaintiff ever received Cunard's Passage Contract setting forth a statute of limitations and a forum selection clause. Accordingly, the forum selection clause and the time-bar issues may not be decided on summary judgment.

For the same reasons, the court will also deny plaintiff's Motion for Partial Summary Judgment on the issues of private limitations period and forum selection.

### VII. Conclusion and Order

Based upon the foregoing, it is therefore

ORDERED that defendant's Motion to Dismiss for Lack of Personal jurisdiction is **GRANTED.** It is further

ORDERED that defendant's Motion for Summary Judgment Dismissing Plaintiff's Complaint as Time–Barred and/or Transferring this Action Pursuant to the Forum Selection Clause in the Cunard Passage Contract is **DENIED.** It is further

ORDERED that plaintiff's Motion for Partial Summary Judgment is **DENIED.**