**Lynn HAAS, Plaintiff,**

v.

**A.M. KING INDUSTRIES, INC., Nevada Machinery, Machinery & Equipment Company, Inc., and Does 1 through 5, inclusive, Defendants.**

**No. 2:94–CV–1152B.**

United States District Court, D. Utah, Central Division.

Nov. 30, 1998.

Steven K. Walkenhorst, Steven B. Smith, Salt Lake City, UT, for Plaintiff.

Andrew M. Morse, Salt Lake City, UT, for Defendants.

## MEMORANDUM OPINION AND ORDER

BENSON, District Judge.

This case came before the court on motions to dismiss for lack of personal jurisdiction brought by defendants Machinery & Equipment Company ("MEC") and A.M. King Industries ("A.M.King"). On October 16, 1998, the court heard oral argument on the motions. Plaintiff was represented by Steven B. Smith and the moving defendants were represented by Andrew M. Morse. Having fully considered the parties' written and oral arguments, the court issues the following Memorandum Opinion and Order in accordance with the court's oral ruling at the hearing.

### I. Background Facts

This case revolves around a piece of industrial mining machinery called a radial stacker that collapsed on the plaintiff, Lynn Haas ("Haas"), at a job site in the state of Utah in 1993.

Both MEC and A.M. King are in the business of buying, refurbishing and selling used mining and construction equipment. MEC is a California corporation with its principal place of business in San Mateo, California. A.M. King is a Nevada corporation with its principal place of business in Oroville, Cali-

fornia. MEC advertises its goods in trade publications, telephone solicitations, electronic mail, U.S. mail, via facsimile transmission and on an Internet website. MEC's website states that MEC is "[o]ne of the world's largest dealers in used chemical, food, pharmaceutical and mining machinery" and claims to have "[t]he largest inventory in the Western United States of used processing machinery." A.M. King advertises its goods in regional trade journals and sends out between 30,000 and 40,000 direct mail advertisements one or two times a year. These various solicitations and publications reach Utah companies and businesses on a regular basis. Since 1988, both companies have had sales in Utah. Since 1988, A.M. King has had a total of 54 Utah-related transactions for a total of $1,004,612 in sales [1] and MEC has engaged in a total of 44 Utah-related transactions [2] over the past ten years.

Until 1996, neither MEC nor A.M. King maintained any offices, employees, or agents in Utah, nor did they own personal or real property in Utah. Neither A.M. King nor MEC have ever been licensed to do business in Utah. In 1996, MEC and A.M. King worked on a project called the Rocky Mountain Refractories ("RMR") project in Salt Lake City, Utah that required the companies to send agents into Utah for approximately five months. The expenses incurred by MEC and A.M. King for the RMR job were approximately $61,000. Since the beginning of the RMR project, MEC and A.M. King have maintained some inventory at the Salt Lake City, Utah job site. Because of the RMR project, MEC and A.M. King leased an apartment in Salt Lake City for approximately five months during 1997.

The defendants' connection with the radial stacker [3] in this case began in 1986 when MEC and A.M. King, as joint venture partners, purchased an industrial conveyor belt from a Colorado company. MEC and A.M. King attempted unsuccessfully to sell the conveyor belt. The conveyor belt was eventually transported to a storage lot in Nevada owned and operated by defendant Nevada Machinery. In approximately 1991, Jack Stone, of Nevada Machinery, approached A.M. King and MEC about purchasing the conveyor belt. His intention was to attach the conveyor belt to an undercarriage and thereby assemble a radial stacker. MEC and A.M. King were agreeable to this idea and rather than sell the conveyor belt outright, the parties agreed to split the proceeds from the sale of the radial stacker with fifty percent to Nevada Machinery and fifty percent to MEC and A.M. King.

It is undisputed that Mr. Stone was solely responsible for designing and assembling the radial stacker and MEC or A.M. King had no part in the design or assembly of the stacker.

After unsuccessfully advertising the radial stacker for individual sale, Nevada Machinery decided to sell the stacker at an auction run by a national auction house, Max Rouse & Sons. On October 28, 1993, the stacker was sold to Wiser Corporation at an auction in Reno, Nevada. The stacker was disassembled, transported to Utah by Wiser, and reassembled there.

On November 30, 1993, the stacker was being used at a worksite in Utah when several Wiser Corporation employees attempted to lift and move the stacker. Plaintiff Lynn

---

1. According to the record in this case, A.M. King has had at least the following sales in Utah: 1988, nine transactions for $225,650; 1989, eight transactions for $105,387; 1990, four transactions for $105,950; 1991, two transactions for $12,250; 1992, one transaction for $5,800; 1993, six transactions for $190,075; 1994, seven transactions for $153,700; 1995, six transactions for $67,050; 1996, eleven transactions for $137,750.

2. MEC has engaged in the following transactions with Utah residents since 1988: 1988, eight transactions; 1989, seven transactions; 1990, four transactions; 1991, two transactions; 1992, one transaction; 1993, six transactions; 1994,

seven transactions; 1995, five transactions; 1996, four transactions

3. A radial stacker is an industrial machine that consists of several different parts, including some type of conveyor belt. A radial stacker has one elevated end and may be adjusted in height so to discharge material and form a stockpile. A radial stacker is different from a fixed position stacker because it can pivot and is also placed on wheels so that it can laterally move the discharge. A radial stacker is generally used in mining operations to create various piles of material.

Haas stood under the stacker while directing the movements of a loader and a backhoe. Moments after the radial stacker had been lifted off the ground, it collapsed and fell on top of Haas. The collapse permanently disabled Haas by severing both his arms, crushing his pelvis, and causing serious internal injuries. Haas brought suit against MEC, A.M. King, and Nevada Machinery in Utah in 1994.

MEC and A.M. King moved this court to dismiss the suit against them under Fed. R.Civ.P. 12(b)(2) on the ground that this court lacks personal jurisdiction over them.

## II. Standard of Review

■■■ In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. In the preliminary stages of the litigation, however, that burden is light. Prior to trial, the plaintiff is only required to establish a prima facie showing of jurisdiction. All disputes of fact are to be construed in a light most favorable to the plaintiff. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).

## III. Personal Jurisdiction

■■■ The exercise of personal jurisdiction over non-resident defendants must comply with the forum state's long-arm statute as well as constitutional due process requirements. Utah law recognizes two types of personal jurisdiction: specific and general. A court may exercise specific jurisdiction if a defendant has purposefully directed his activities at residents of the forum and the litigation results from claims that arise out of or relate to those activities. Utah Code Ann. § 78–27–24 (1998). *See also, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528, (1985). A court may exercise general jurisdiction where the defendant's contacts with the forum rise to the level of being "continuous and systematic." *See, Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Haas alleges that this court has both general and specific jurisdiction over MEC and A.M. King.

## A. Specific Jurisdiction

Under the due process clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Specific jurisdiction is appropriate where the defendant has " 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In Matter of Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■■■ In the present case, the moving defendants' contacts are inadequate to establish specific jurisdiction because this suit did not arise out of and was not related to the moving defendants' forum-related activities. The radial stacker that is the subject of the present suit was not sold in relation to any of MEC's and A.M. King's advertising and sales contacts with Utah. Rather, a Utah company went to an auction in Nevada, bought the stacker there, and transported the radial stacker back to Utah. MEC and A.M. King did not know and could not reasonably anticipate at the time of the sale that the stacker would be moved to Utah. MEC and A.M. King's only direct contact with this case is that they owned part of the machinery before it was sold in Nevada. While it is true MEC and A.M. King had general contacts with Utah in the form of advertisements and occasional sales, Haas' injuries did not arise out of and was not in any way related to these contacts.

Accordingly, because Haas' alleged injury does not arise out of or relate to MEC's and

A.M. King's contacts with Utah, the exercise of specific jurisdiction by this court over MEC and A.M. King in this case is improper.

## B. General Jurisdiction

■ Haas argues that MEC and A.M. King have sufficient contacts with the state of Utah to allow this court to exercise general jurisdiction over them. General jurisdiction over a corporate defendant is based on the defendant's general business contacts with the forum. "Where 'general jurisdiction lies ... the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state.'" *Kuenzle*, 102 F.3d at 455–56 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.2d 1523, 1533 (10th Cir. 1996)). For general jurisdiction, the defendant's contacts with the state must be "systematic and continuous." *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is based on the notion that a person or corporation is amenable to any suit at the place where the party is predominantly headquartered. It is different from specific jurisdiction which allows a non-resident party to be sued only in a forum that is sufficiently connected to the claims alleged. General jurisdiction recognizes that when a party's contacts with a state are so numerous and significant that the party has a domicile in or a near domicile relation to the state, the state may exercise jurisdiction over the party for any type of suit, regardless whether the suit is related to the specific contacts the party has with the state.

### 1. Period for Assessing Contacts

As a preliminary matter, the parties contest the applicable time period for determining whether defendants' contacts with the state of Utah are sufficiently "systematic and continuous" to support a finding of general jurisdiction. MEC and A.M. King argue that the applicable time period for assessing minimum contacts is only up to the time of the accident. Plaintiff argues that the applicable time extends to the present time. Neither side has it right.

■ The Second Circuit Court of Appeals recently recognized that "[f]ew cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently 'continuous and systematic' for the purposes of general jurisdiction." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 569 (2d Cir.1996). The Second Circuit concluded that "district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard." *Id.* at 569–70. This court agrees with the Second Circuit's articulation of the time period for assessing minimum contacts. As a matter of common sense consistent with the notion underlying the concept of general jurisdiction, courts usually consider the defendant's contacts for several years prior to the filing of the suit. *Noonan v. Winston Co.*, 135 F.3d 85, 93 & n. 8 (1st Cir.1998) (noting that all of foreign corporation's contacts for two year period prior to filing suit would be considered in assessing minimum contacts for general jurisdiction); *Metropolitan Life Ins. v. Robertson–Ceco Corp.*, 84 F.3d 560, 570 (2d Cir.1996) (examining defendant's contacts with forum state for six year period in assessing minimum contacts for general jurisdiction purposes), *Wilson v. Belin*, 20 F.3d 644, 650–51 (5th Cir.1994) (examining defendant's contacts with forum state over five year period); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987) (examining defendant's contacts over five year period); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329–31 (9th Cir.1984) (examining defendant's contacts over three year period). Accordingly, the appropriate time period for assessing MEC's and A.M. King's contacts with Utah is several years prior to and including the time the complaint was filed in 1994.

Defendants argue that "only contacts occurring prior to the event causing the litigation may be considered" in determining general jurisdiction. *See, Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir.1990). This misses the point of general jurisdiction. General juris-

diction focuses on the fairness of subjecting a person, or a corporation, to all suits of any kind in the place where the person or corporation is domiciled, headquartered, or otherwise engaging in continuous and systematic activities. The important time for assessing this type of presence is at the time of suit, not years earlier, or years later. The defendants cite several cases in support of their proposition.[4] However, all of them deal with specific, rather than general, jurisdiction. As noted above, specific jurisdiction requires quite a different analysis from general jurisdiction. The Second Circuit summarized the difference as follows: "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general contacts.'"[5] *Metropolitan Life Ins. Co. .*, 84 F.3d at 568 (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

In its effort to determine whether A.M. King or MEC had continuous and systematic contacts with the state of Utah, this court will consider all of A.M. King's and MEC's contacts with the state of Utah up to and including the time this lawsuit was filed in 1994. Because the RMR project began after plaintiff filed suit, it will not be considered as a relevant contact for purposes of general jurisdiction.[6]

2. The Defendants' Contacts

As stated previously, the United States Supreme Court has held that in order to establish general jurisdiction, the plaintiff must show that the defendant had "continuous and systematic contacts" with the forum state. *Helicopteros,* 466 U.S. at 416, 104

S.Ct. 1868. The Supreme Court has analyzed general jurisdiction in two seminal cases. In *Perkins v. Benguet Consolidated Mining Co.,* the Court found that Ohio could exercise general jurisdiction over a foreign defendant corporation when the corporation had conducted directors' meetings, business correspondence, banking, stock transfers, payment of salaries, and purchasing of machinery from Ohio. 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The president of the corporation in *Perkins* moved from the Philippine Islands to Ohio during World War II and conducted the affairs of his business from his home in the United States. The court found that while the company did not own property in Ohio, "many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons." *Id.* at 449, 72 S.Ct. 413. The Court articulated the reasoning behind its inquiry: "The essence of the issue here, at the constitutional level, is a like one of general fairness to the corporation." *Id.* at 445, 72 S.Ct. 413.

The Supreme Court again considered general jurisdiction in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In *Helicopteros,* the Supreme Court found that Texas did not have general jurisdiction over a Colombian corporation. The Colombian company had sent its chief executive officer to Houston for one contract negotiation session, accepted checks drawn on a Houston bank, purchased helicopters, equipment and training services from a Texas company and sent personnel to Texas for training. *Id.* at 416, 104 S.Ct. 1868. Noting that the defendant corporation did not have a place of business in Texas and was not licensed to do business there, the

---

4. Defendants cite the following cases: *Cape v. Maur,* 932 F.Supp. 124, 127 (D.Md.1996) (noting that specific jurisdiction was the "only basis remotely possible" for finding jurisdiction); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990); *United States v. Investronica Inc.,* 2 F.Supp.2d 330, 334 (W.D.N.Y.1998); *Gen. Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 663 (E.D.Mich.1996); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 812 F.Supp. 1139, 1147 (D.Kan.1993).

5. The Tenth Circuit noted that although the minimum contacts analysis was originally articulated to determine whether specific jurisdiction existed, it also connotes the "broader due process inquiry into the sufficiency of any nonresident defendant's contacts with a forum state." *Kuenzle,* 102 F.3d 453, 455 n. 2 (1996).

6. As discussed *infra,* this court reaches the same conclusion regardless of the RMR project.

court found that the defendant's contacts with Texas could not be described or regarded as "continuous and systematic" in nature. *Id.* at 416–17, 104 S.Ct. 1868.

In addition to the analyses provided by the Supreme Court, the Tenth Circuit Court of Appeals has also articulated four factors to consider in assessing general jurisdiction:

(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 457 (10th Cir.1996).

■ Taking into consideration the concept of "general fairness" to the defendants as well as the factors elucidated by the Tenth Circuit, this court finds that the defendants' contacts with the state of Utah are insufficient to meet the "continuous and systematic" requirement.

It is undisputed that neither of the moving defendants has ever had a place of business in Utah and neither defendant has ever been licensed to do business in the state. MEC's and A.M. King's contacts have basically amounted to placing national and regional advertisements, sending out direct mailings, and maintaining a website. The mere placement of advertisements in journals of national distribution cannot be regarded as "continuous and systematic" in nature in a given state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir.1994). The moving defendant's websites are similar in purpose and effect to the journal advertisements, and also lack the kind of continuous and systematic contact required for general jurisdiction.

The court recognizes that the moving defendants have sold some of their products to Utah residents. The total of these sales is less than one percent of each moving defendant's national sales. This district court earlier declined to recognize jurisdiction over a defendant corporation when the defendant's sales in Utah amounted to one-tenth of one percent of the defendant's total business nationwide. *Harnischfeger Eng'rs v. Uniflo Conveyor Inc.,* 883 F.Supp. 608, 612 (D.Utah 1995). Because MEC's and A.M. King's sales in Utah were similarly minimal, they do not establish sufficient contacts for the exercise of general jurisdiction.

Taking into account all of MEC's and A.M. King's contacts with Utah until this suit was brought, it would be unfair to recognize general jurisdiction over the moving defendants. Such a finding of general jurisdiction, if adopted elsewhere, would conceivably subject these defendants to suit of any kind in all fifty states, whether or not their contacts with those states related to the cause of action in question. The moving defendant's contacts here appear to be less significant than the corporate defendant in *Helicopteros* and substantially less significant than the defendant in *Perkins.* MEC's and A.M. King's contacts are simply not pervasive enough to hold them amenable to suit in Utah for a cause of action virtually unrelated to those contacts.

Even if this court accepted plaintiff's argument that it should consider the defendants' RMR project in 1996, this court would still not exercise general jurisdiction over the moving defendants. MEC and A.M. King only participated in that project for a limited time and in a limited way. Indeed, the moving defendant's RMR contacts are quite analogous to the contacts of the foreign defendant in *Helicopteros* and thus are insufficient to support general jurisdiction.

### IV. Conclusion

MEC's and A.M. King's contacts with the state of Utah are insufficient to satisfy the requirements of either specific or general jurisdiction. Accordingly, this court GRANTS A.M. King's and MEC's motions to dismiss for lack of personal jurisdiction.